Paul Gima *v.* The Hudson Coal Co., Appellant.

Argued March 7, 1932.

Before
TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Rudolph S. Houck,* and with him *John P. Kelly,* for appellant, cited: Shoffler v. Lehigh Valley Coal Company, 290 Pa. 480; Kubes v. Hillman Coal Company, 96 Pa. Superior Ct. 340; Sugar Notch Borough, 192 Pa. 358.

*E. C. Marianelli,* for appellee, cited: Maguire v. Lees & Son Co., 273 Pa. 85; Walker v. Quemahoning Coal Co., 99 Pa. Superior Ct. 252.

OPINION BY KELLER, J., July 14, 1932:

This is a workmen's compensation case. The referee made the following findings of fact:

"1. Claimant on February 19, 1930, was a cer-

tified miner, working for Samuel Gabriel, a mining contractor, at the Olyphant Colliery of the Hudson Coal Company.

"2. On that day he charged twelve holes with monabel, a high explosive manufactured by the E. I. duPont deNemours Powder Company.

"3. Three of these holes were wired to be fired by detonators and the remaining nine by time delay fuses cut to different lengths so that upon firing, the three holes with detonators would explode at one time and the nine remaining holes separately in succession, making in all ten separate reports.

"4. Claimant fired these charged holes by battery, but he and the laborer who was with him heard but nine reports.

"5. Notwithstanding this fact, claimant, the laborer, and subsequently the contractor, returned to the face, where one of the holes was found to be still smoking and after about five minutes it was ascertained that this hole had misfired.

"6. After the discovery of this fact and before claimant could get away, the charge in this hole exploded, injuring the claimant.

"7. Special rules for the charging and firing of monabel were issued by the manufacturer, and copies of these rules, with its official signature, approved by the superintendent of the mine, were posted up in legible character in conspicuous places at and near the mine, where they could be conveniently read by the persons employed, at and before the date of claimant's injury.

"8. Said rules of the manufacturer contained the following provision: 'A safe time, at least twelve hours or more, should be allowed before returning to a misfire.'

"9. Claimant knew that he should not return to a misfire until after a period of twelve hours or more."

His conclusions of law were as follows:

"1. The rules for charging and firing monabel were issued, endorsed, approved and posted as required by Rules 29 and 54 of Article XII of the Act of June 2, 1891, P. L. 176, entitled 'An Act to provide for the health and safety of persons employed in and about the anthracite coal mines of Pennsylvania,' etc.

"2. Claimant in returning to the face in less than twelve hours after he had reason to believe that one of the holes had misfired, violated Rule 29 of said act and the injuries received by him were due to such violation of the law.

"3. Claimant is, therefore, not entitled to receive compensation for any disability sustained on account of such injury."

An appeal to the board was taken by the claimant on the following sole ground: "The undisputed evidence of both claimant and defendant is not that 'Claimant was returning to the face in less than twelve hours after he had reason to believe that one of the holes had misfired,' but, that he returned to the face believing that the hole had actually fired, which, of course, was a mistake of fact upon the part of the claimant." The board sustained the findings of fact and conclusions of law of the referee, and his disallowance of compensation, and dismissed the appeal.

On appeal by the claimant to the Court of Common Pleas of Lackawanna County, that court made the following, as it termed them, 'conclusions of law':

"1. As the facts were not clear to claimant and he did not know he was returning to a misfire, he cannot be convicted of the crime of returning to a misfire and lose his compensation.

"2. Posting of a copy of the rules of the Anthracite Mine Law of 1891, P. L. 176, as required by Rule 54, Article 12 of the act, was necessary to notify

claimant that the violation of manufacturer's rules was a misdemeanor.

"3. Though the accident resulted from a breach of statutory duty, the claimant is not necessarily excluded from the benefit of the compensation law.

"4. Even though claimant violated the Anthracite Mine Law, his violation was a negligent performance of a duty in the course of his employment, and not an act breaking the continuity of his employment.

"5. Claimant is entitled to compensation."

The defendant company appealed.

(1) The first 'conclusion' was in effect a setting aside by the court of a finding of fact of the referee and the board, a matter beyond its powers, if there was evidence to support the finding of the referee, approved by the board. The referee was not bound to accept as true the evidence of the claimant at the hearing, when it was in conflict with his prior statements and the evidence of other witnesses. There was ample evidence to sustain the finding that the holes, charges and fuses were so arranged as to make ten separate reports when the electric battery was fired; that claimant and his laborer counted them and heard but nine reports. This was indication or warning of the fact that one of the charges had failed to be fired, or was a misfire, and under the special rule, referred to in the findings of the referee, required the claimant to wait at least twelve hours before returning to the charged hole. The fact that this would stop his work, and attendant pay, for the rest of the day, and that sometimes two charges, even with different length fuses are known to have gone off together, did not warrant his violation of the rule,—with which he was personally familiar—and the consequent risk of danger to himself and others which the rule was designed to prevent,—to make assurance doubly sure. If a miner should be permitted to dis-

regard the evidence of his senses by suggesting that he thought two of the charges might have gone off together, the rule would be a dead letter and the protection which it furnishes workmen in mines would be destroyed. Besides, in this case, this one hole was still slightly smoking. Furthermore, the lower court was at fault in its approach to the matter. The workmen's compensation authorities had not "convicted [claimant] of the crime of returning to a misfire." There was only one forum which could do that, the Court of Quarter Sessions of Lackawanna County. The duty of the referee and the board was to determine whether under all the evidence the claimant had received his injury "in the commission of an act in direct violation of the law." (Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480, 484); and this was to be determined by a clear preponderance of the evidence, and not beyond a reasonable doubt: Floyd v. Paulton Coal Mining Co., 94 Pa. Superior Ct. 1. The strict measure of proof demanded in a criminal case is not required: Labuck v. Mill Creek Coal Co., 292 Pa. 284, 287. It is not even essential that the duty enjoined by statute which he violated should have been declared by the legislature to be a *criminal* offense or *misdemeanor*. If it forbids the doing of a certain act, even though no criminal prosecution is provided for its violation, it is none the less such a law that its violation will forfeit compensation if because of it the workman is injured. For example, if the penalty for a violation of the mine law rules, etc. had been declared to be dismissal or suspension from employment, the effect as to forfeiture of compensation for an injury resulting from such violation would have been the same. Hence, the issue is not whether the claimant might be convicted in a criminal court, but whether he was injured while doing something in direct violation of law.

As before stated, the evidence in the case supported the findings of the referee and the board, and we may add, were even such as, in a prosecution under the act, would have been sufficient to take the case to the jury. It follows that unless the remaining 'conclusions' of the court below require a different disposition of the case, the first one calls for a reversal of the judgment.

(2) When the special rules or regulations relative to the use of monabel were proved and offered in evidence (See Labuck v. Mill Creek Coal Co., supra) no objection was made to their admission on the ground that they had to be accompanied by proof of the posting of an abstract of the Anthracite Mine Law and the general rules contained in Article XII, as provided by Rule 54 thereof. The parties may have known that the provisions of Rule 54 had been fully complied with, and hence refrained from useless objection; whatever the reason, no objection was raised on that score before the referee or the board and none such was specified in the appeal to the court. If the court felt that the point was sufficiently important to sustain or deny an award, notwithstanding that it had not been presented before the Workmen's Compensation authorities, and in spite of the presumption, which generally attaches, of compliance with the law, the correct course would have been to refer the matter back to the board for a hearing and determination on that point, instead of concluding that such abstract had not been printed and posted. But we are of opinion that it was only necessary to prove such compliance with the act and rules as was relevant to the matter under consideration, and that related to the use of high explosives other than gunpowder. As pointed out before, for the purposes of this hearing—it not being a criminal prosecution—it was not necessary to prove that notice was given the claimant that

violation of any provision of the act or rules would be a misdemeanor, but only that such violation was forbidden by law, and that was shown by the evidence of a witness who said he had explained the rule to claimant, as well as by posting the rules which in themselves purported to be established pursuant to Rule 29 of Article XII of the Anthracite Mine Law.

(3) The Supreme Court in Shoffler v. Lehigh Valley Coal Co., supra, p. 484, ruled that although all the other essentials for compensation be present, 'course of employment' does not include (a) injuries received while away from the actual place of employment where the deviation or departure is wholly foreign to his duties, and amounts to an abandonment of employment, or (b) injuries received in the commission of an act which is in direct violation of law. It is true that a third class of injuries was mentioned in that case under sub-heading (c), viz., those received in the commission of an act contrary to the positive orders of the employer, and this expression was subsequently, in Dickey v. Pittsburgh & L. E. R. Co., 297 Pa. 172, 174, declared to have been stated too broadly and was limited in its application. But the later case, as well as Welsch v. Pittsburgh Terminal Coal Corp., 303 Pa. 405, cited by the court below, still recognizes the rule as declared in the Shoffler case with reference to (b), that proof that the injuries were received in the commission of an act in direct violation of law, excludes the claimant from compensation.

(4) Negligence in the ordinary performance of duty does not of itself deprive a workman of compensation; but where his act is a direct violation of law, the question whether he was guilty of negligence or not does not enter into the matter. The commission of an act in direct violation of law, resulting in injury to the employe doing it, deprives him of com-

pensation: Welsch v. Pittsburgh Terminal Coal Corp., supra, p. 409.

While the claimant did not raise the question before the referee or the board, in his appeal to the court of common pleas he did question the constitutionality of the Anthracite Mine Act as to the part here invoked. The lower court did not rule upon the question for it reversed the board on other grounds. But before we can reverse the judgment of the lower court, the question must be considered by us.

The constitutional provision relied upon is Article II, Sec. 1: "The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives." Almost the same phrase is found in the federal constitution, Article I, Sec. 1: "All legislative power herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives."

The appellee contends that Rule 29, of Article XII, of the Anthracite Mine Law, (printed in the margin[1]) violates the constitutional provision just above quoted, in that it amounts to a delegation of the legislative power vested in the General Assembly.

The Anthracite Mine Law was not enacted for the benefit of the coal operators. It is a measure designed and enacted, primarily, to provide for the health and safety of persons employed in and about the anthracite coal mines. In conjunction with the Bituminous Mine Law it seeks to throw around the miners of coal in this State every safeguard and protection that is possible. It has been on our statute books for over

---

Note 1. "Rule 29. When high explosives other than gunpowder are used in any mine, the manner of storing, keeping, moving, charging and firing or in any manner using such explosives, shall be in accordance with special rules as furnished by the manufacturers of the same. The said rules shall be endorsed with his or their official signature and shall be approved by the owner, operator or superintendent of the mine in which such explosives are used."

forty years, and has been of incalculable benefit to those engaged in the hazardous occupation of mining coal. To destroy the safeguard and protection of this law in order to deal liberally in the allowance of compensation to a few men who were injured by failing to comply with its salutary provisions, would be a most short sighted policy, which should not be adopted unless required by the plain mandate of the Constitution. Fortunately, we do not feel compelled so to construe the law.

In Locke's App., 72 Pa. 491, where the same provision in our immediately preceding Constitution was under consideration in reference to a local option act, the court overruled the earlier case of Parker v. Com., 6 Pa. 507, and, speaking through Mr. Justice Agnew, said: "The character of this law is precisely that of hundreds of others, which the legislative will makes dependent on some future act or fact for its operation. To assert that a law is less than a law because it is made to depend on a future event or act, is to rob the legislature of the power to act wisely for the public welfare, whenever a law is passed relating to a state of affairs not yet developed, or to things future, and impossible to be fully known........ What is more common than to appoint commissioners under a law to determine things upon the decision of which the act is to operate in one way or another? The courts exercise powers dependent on their own discretion. Take the case of granting a license to keep an inn and sell liquor. The judge determines whether the license is necessary, and if not necessary, the law says to the applicant, 'no license.' The law takes effect just as the judge determines, yet who says it is the court that legislates?...... Though contingent in form, the law is mandatory throughout in all it requires, and all it determines. That is not less an act of sovereign power, which says to the subject, do this,

and that shall follow; do that, and another thing shall follow. To the subject a discretion of acting is given, and as he decides, the law pronounces the consequences. It is the sovereign which gives the law, not the subject. Then, the true distinction, I conceive, is this: The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation. Hence the necessity of the municipal divisions of the state into counties, townships, cities, wards, boroughs and districts, to which is committed the power of determining many matters necessary, or merely useful, to the local welfare......  If a determining power cannot be delegated, then there can be no power delegated to city councils, commissioners, and the like, to pass ordinances, by-laws and resolutions in the nature of laws, binding and affecting both the persons and property of the citizens. If a determining power cannot be conferred by law, there can be no law that is not absolute, unconditional and peremptory; and nothing which is unknown, uncertain and contingent can be the subject of law.'' See also, McGonnell's License, 209 Pa. 327; Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355; Foster Twp. Road Tax, 32 Pa. Superior Ct. 51.

Following the Locke decision, we have had much legislation which does not delegate the power of the General Assembly to make laws, but does delegate to some person or body the power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. Thus the

legislature has created the Public Service Commission its agent to do that very thing with reference to the regulation and supervision of public service companies and their facilities and rates. The Workmen's Compensation Board has been formed to assist in the determination of facts and the application of the law to the facts so found in the realm of injury occurring in industry. The Department of Labor and Industry is given authority to adopt rules and regulations for the better protection of workers in establishments. See Hess v. Union Indemnity Company, 100 Pa. Superior Ct. 108; Shumkas v. P. & R. C. & I. Company, 101 Pa. Superior Ct. 401; Baun v. U. G. I. Contracting Company 106 Pa. Superior Ct. 282. The Department of Agriculture (State Livestock Sanitary Board) has power to adopt and enforce rules for the examination and testing of cattle, and the quarantining of diseased cattle: Com. v. Falk, 59 Pa. Superior Ct. 217. The Department of Health may make and enforce rules and regulations designed for the protection of the public health and the quarantining of communicable diseases (Acts of April 27, 1905, P. L. 312; April 22, 1905, P. L. 260; April 17, 1927, P. L. 154; Com. v. Emmers, 221 Pa. 298, 305; Dixon v. Sheffer, 46 Pa. Superior Ct. 452). We have legislative authority for the rules and regulations to enforce the Food and Drug Laws: Com. v. Sweeney, 61 Pa. Superior Ct. 367; the use and sale of narcotic drugs; the manufacture and sale of oleomargarine and butter substitutes; the granting of licenses to manufacture industrial alcohol; the censoring of moving picture films: Buffalo Branch M. F. C. v. Breitinger, 250 Pa. 225; the motor vehicle code of June 22, 1931, P. L. 751, with its special powers relative to the licensing of operators (sec. 608), the suspension of licenses (sec. 615), regulation of road signs and markings (secs. 1105, 1107), the establish-

ment of through highways (sec. 1112), etc.; the change of width and location of state highways by the Secretary of Highways with the approval of the Governor, (Act of May 31, 1911, P. L. 468, sec. 8; Penn Builders v. Blair County, 302 Pa. 300); the State Board of Education may grant or withhold approval of annexation of territory to a city: In re Annexation of Baldwin Twp., 103 Pa. Superior Ct. 106, affirmed by the Supreme Court; and many other laws along similar lines, which do not constitute a delegation of legislative power, but grant some person or body the power to determine some fact or state of things in connection with which the law as enacted by the legislature takes effect. As was trenchantly said by Chief Justice BLACK in Moers v. City of Reading, 21 Pa. 188, 202, in discussing the same constitutional provision, "Half the statutes on our books are in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such a discretion is the making of the law."

Both the Anthracite and Bituminous Mine Laws are replete with instances of powers granted to mine bosses, mine foremen, mine inspectors, and similar officials who do not legislate, but who are authorized to do certain things and give certain orders which must be obeyed by the miners and their laborers, and violation of which constitutes an offense against the mine laws. The power to establish and approve certain rules for the storage, firing, use, etc. of high explosives, is no more a delegation of legislative power than the determination of what places in the mine are safe to work in (rules 5, 34); the granting of permission to fire a blast, where locked safety lamps are used (rule 11); the fixing of the number of persons who may be hoisted or lowered at one time in a mine (rule

17); the determination whether a miner is competent to blast coal, etc., (rules 35, 36); the fixing of a safe steam pressure (rule 39); and none of these are different in character from the power formerly given the courts to pass upon licenses for the sale of intoxicating liquors, referred to and upheld in the opinion in the Locke case. In fact a consideration of these different matters will show how impossible and unscientific it would be for the General Assembly to attempt to enact laws covering in detail all the matters thus wisely provided for. The Bituminous Mine Law of 1911, P. L. 756, came before us in Kubes v. Hillman C. & C. Co., 96 Pa. Superior Ct. 340, and was sustained. The Anthracite Mine Law, in the very same provision now under attack, came before the Supreme Court in Labuck v. Mill Creek Coal Co., supra. There the Workmen's Compensation Board and the Court of Common Pleas of Schuylkill County, reversing the referee, held that Rule 29, now involved, was unconstitutional as a delegation of legislative power (9 D. & C. Reps. 507, 508). On appeal to the Supreme Court the judgment of the lower court was sustained, but not for the reason advanced by the lower court, but because there was insufficient proof of the authorization and posting and publishing of the rules. Had the Supreme Court agreed with the decision of the lower court as to the unconstitutionality of the rule, it would have been the easy and natural thing to say so. That they did not do so, but based the affirmation on a wholly different ground is persuasive that they did not find it violative of the Constitution. The case of O'Neil v. American Fire Ins. Co., 166 Pa. 72, on which the Board and lower court relied in that case has been distinguished by the Supreme Court in Com. v. Alderman, 275 Pa. 483, 490, and Com. v. Puder, 261 Pa. 129, 139, Mr. Justice FRAZER, now Chief Justice, saying in the latter case, that in the O'Neil case,

"there was an attempt to delegate to a single individual the power to prescribe a compulsory form of contract between private parties, leaving to the official the full power to prescribe the form and enforce its use."

The similar provision in the federal constitution, supra, has been construed the same way. See Field v. Clark, 143 U. S. 649, 694, which cited with approval Locke's App., supra, and Moers v. City of Reading, supra; Union Bridge Co. v. U. S., 204 U. S. 364; Monongahela Bridge v. U. S., 216 U. S. 177, 192. Inter alia, the Interstate Commerce Commission is authorized to promulgate regulations for the transportation, etc., of explosives and other dangerous articles, which shall be binding on all common carriers and violation of which is made an offense (U. S. Code, Title 18, secs. 383, 386). The Postmaster General is given authority to distinguish between the several classes of mail matter and to provide for less frequent dispatches of mail matter to the third and fourth classes (U. S. Code, Title 29, sec. 559). The Secretary of the Treasury is authorized to make rules and regulations relative to internal revenue and the collection of duties (26 Stat. 826, 828; American Sugar Ref. Co. v. U. S., 211 U. S. 155). The Secretary of the Treasury, the Secretary of Agriculture and the Secretary of Commerce may make rules and regulations for carrying out sections 1 to 15 of the Food and Drug Laws (U. S. Code, Title 21, sec. 3). The Secretary of Agriculture is directed to fix uniform standards for tea (U. S. Code, Title 21, sec. 43; See also Buttfield v. Stranahan, 192 U. S. 470, 486); rules and regulations for the inspection of meat (U. S. Code, Title 21, sec. 71); for the shipment of tuberculous cattle (U. S. Code, Title 21, sec. 116); for foot and mouth disease (U. S. Code, Title 21, sec. 120); and for quarantining cattle and livestock (U. S. Code, Title 21, sec. 123);

and the Secretary of the Navy is authorized to issue rules and regulations governing the naval forces which shall have the authority of law (Ex parte Reed, 100 U. S. 13; Manlove v. McDermott, 104 Pa. Superior Ct. 560. See also Sproles v. Binford, 286 U. S. 374.

The General Assembly cannot be expected to enact laws which shall in themselves keep abreast of every advance of science and invention in the explosive line, any more than it can of itself determine when a working place is free of gas and fit to work in; but it has established a means by which such advances can be utilized and made safe in mines, and in Rule 29 it has delegated its power to determine the safe method to store, charge, fire and use such explosives to the manufacturer and the mine owner jointly, knowing that they will not for their own interest err on the side of danger, and has established a method of making known such determination to the miners and laborers who use them by posting and publishing and has declared that a use of such high explosives contrary to such determination, thus posted and published, is a violation of law. In doing so, the General Assembly has legislated—not the powder manufacturer or coal operator—no legislative power or authority has been delegated to them.

The first, second, third, fourth, fifth and sixth assignments of errors are sustained. The judgment of the lower court is reversed and the order of the Workmen's Compensation Board, affirming the disallowance of compensation by the referee, is reinstated and affirmed.