Karchut, Appellant, *v.* Helvetia Coal Mining Co.

Argued April 10, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*R. J. Lucksha,* for appellant.

*Henry I. Wilson,* for appellee.

Opinion by Cunningham, J., October 2, 1933:

On February 28, 1930, Dmytro Karchut, then employed as a miner by Helvetia Coal Mining Company in one of its mines in Indiana County, was accidentally crushed under a car, transporting a cutting machine, and received injuries which resulted in his death on March 1st. In behalf of his non-resident alien widow, Katarzyna Karchut, the Consul of Poland, at Pittsburgh, filed a claim petition for an award to her of compensation, under our Workmen's Compensation Act of June 2, 1915, P. L. 736, and its amendments. The claim was resisted upon the ground that decedent

had taken himself out of the course of his employment by attempting to mount and ride upon the car in defiance of the positive orders of his employer; the dependency of the claimant was also questioned. The compensation authorities reached the conclusion that she was dependent, but disallowed compensation upon the ground, as stated by the board in adopting the findings of fact and conclusions of law of the referee, that "the testimony on behalf of the defendant clearly establishes the fact that the deceased sustained his injuries while riding on a machine on which it was not his duty to ride and as to which he had no duty to perform, and on which he had been forbidden to ride; and that he was a trespasser and by his act had taken himself out of the course of his employment."

Both parties appealed to the court below; that tribunal dismissed all exceptions to the action of the board and, in effect, entered judgment for the coal company. The present appeal is on behalf of the claimant from that judgment and the question involved relates to the compensability of the death, under the facts disclosed by the evidence.

Certain uncontroverted facts may be thus stated:

Among the instrumentalities used in the mine were electrically operated coal cutting machines. They were mounted on trucks and removed therefrom when in use in the rooms. While being moved from one working place to another, they were replaced on the trucks, and the latter propelled, by electric power, along tracks and over switches as desired. The cutting machine, during the transportation of which the accident occurred, was in charge of Joseph Kringus, the "cutter," and decedent was his assistant, or "scraper," whose duty it was to help in loading and unloading the machine, and, when it was being moved, turn the latches, or switches. These men had worked together for a long time.

On the afternoon in question, after they had finished cutting coal in room No. 29, it became their duty to move the machine, on the trucks and over the tracks, a distance of about 547 feet, and place it in room No. 43, ready for use there on the following morning. Under such circumstances, it was the duty of Kringus to ride upon and operate the truck bearing the machine; decedent's duty was to walk in advance of the truck for the purpose of setting the switches in the position necessary to accomplish the movement. The accident occurred while the truck was moving over the main haulage track and between the specified rooms.

There was competent evidence from which the referee could, and did, find that decedent understood and spoke English; that at a meeting of employes, held several days prior to the accident, he was given explicit notice of the establishment and promulgation of a rule that "scrapers" were not allowed, under any circumstances, to ride on the cutting machines or trucks in any direction of travel; that these instructions were repeated to him the following day; and that, as late as the morning of the day of the accident, Kringus made him get off when he attempted to ride on the trucks.

Among the findings made by the referee and adopted by the board were these:

"The men had just started to take the machine up, and decedent had thrown one latch when for some reason or another he walked back toward the machine rather than away from it as he should have done, and from the evidence it is apparent that decedent attempted to board the machine, and in some manner, he either slipping or falling, his right leg went under the trucks of the machine; his right leg was badly mangled and he received other body injuries that resulted in his death March 1, 1930.

"The evidence further indicates that the decedent had no duty to perform on the cutting machine, and any duties to perform on the cutting machine were assigned to the cutter; the decedent's duties were merely to throw the latches in order that the cutting machine would have a clear track. In defiance of positive orders given the day before and a day prior to that, and after he had been warned the morning of the fatal accident not to ride the cutting machine, he sustained the injuries which resulted fatally when either riding the machine or in attempting to board it."

There was competent evidence to support these findings, subject to the qualification that the statement that "decedent had no duty to perform on the cutting machine" must be understood as applicable only to the situation which existed while it was in course of transportation from one location to another.

When it became necessary to load or unload the cutting machine, and while it was in use, decedent had the duty of assisting the "cutter" in handling it.

In our opinion, the law has not been properly applied to the controlling facts in this case.

The pivotal question here involved is whether the facts bring the case within the qualification made by our Supreme Court in Dickey v. Pittsburgh & L. E. R. R. Co., 297 Pa. 172, 146 A. 543, of the rule declared in Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480, 139 A. 192, relative to the effect of the commission by an employe of acts contrary to the positive orders of his employer.

In the Shoffler case, it was said that the "course of employment" would be considered as having been broken if, inter alia, the injuries were received in the commission of an act "contrary to the positive orders of the employer."

In the Dickey case, it was explained that the inten-

tion of the Supreme Court was not to deny recovery "for all violations of positive orders;" that the rule announced in the Shoffler case must always be considered in connection with the facts of the particular case in hand; and that "care must be taken not to confuse the principle enunciated with negligent acts, ...... or those acts in disregard of positive orders of the employer where the employe's duties included the doing of the act that caused the injury, or where his duties were so connected with the act that caused the injury that, as to it, he was not in the position of a stranger or trespasser."

We think this case falls within the exception last mentioned; viz., that decedent's duties were so connected with the handling and transportation of the cutting machine that he was not in the position of a stranger or trespasser and had not taken himself out of the course of his employment.

If decedent had undertaken to operate the truck upon which the machine was loaded, the illustration, used in the opinion in the Dickey case, of a brakeman who has no duty to perform on a railroad engine, but boards it, starts it, runs by a red signal, and is injured, would be apposite in this case. This decedent, however, did nothing of this nature, and although his injuries were due to a violation of the positive orders of his employer, they were received while performing duties incident to his employment.

The judgment is reversed and the record remitted to the court below, with instructions to return it to the board to the end that a proper allowance of compensation may be made.