# Lewis v. Pittsburgh Terminal Coal Corporation, Appellant.

Argued April 16, 1934.

Before Trexler, P. J., Keller, Stadtfeld, Parker and James, JJ.

*Sidney J. Watts* of *Baker & Watts,* and with him *John M. F. Hana,* for appellant, cited: Beshenick v. Pittsburgh Terminal Coal Co. 110 Pa. Superior 156; Gima v. Hudson Coal Co., 106 Pa. Superior 288; Morucci v. Susquehanna Col. Co., 287 Pa. 508.

*C. L. V. Acheson,* and with him *Meyer Goldfarb,* for appellee, cited: Morell v. Coal & Coke Co., 103 Pa. Superior Ct. 316; D'Jorko v. Berwind White Coal Co., 231 Pa. 164.

OPINION BY PARKER, J., July 13, 1934:

This is a workmen's compensation case in which the claimant is seeking compensation for the death of her husband which occurred as the result of injuries suffered by him while riding on a motor in a mine of the defendant company. The question involved is whether the injury occurred by an accident in the course of his employment.

Joseph L. Lewis, who was employed as an assistant mine foreman by the defendant in one of its mines, was injured on August 7, 1931, and as a result died three days later. August 7 was what is known as an idle day, or one in which the men did not generally work; coal was not removed from the mine, but advantage was taken of the cessation of operations to make repairs. Early on the morning of that day, Lewis reported to the mine foreman, Wilson Boyd, who instructed Lewis and three others, Royal, Gilbert, and Collins, all assistant mine foremen, to take the motor and haul slate and rails. Just then two cutters came along and the foreman instructed Lewis "to take the cutters in, examine the section and come back out and finish the day with Royal and Gilbert." Lewis went into the mine and when he had finished his task with the cutters, proceeded toward the place he was directed to go after finishing the preliminary work. As

he was on his way, Royal, who was acting as motorman, saw Lewis coming with his light, backed up the motor about five hundred feet and took him on board. Collins was seated with Royal in the cab and Gilbert way lying flat on the top of the motor. Lewis then took a position lying prone on the top of the motor. They had proceeded to a point somewhat more than one-half mile from the entrance to the mine when a large rock fell from the roof of the entry, striking Lewis and causing the injuries from which he died. The field of the labor in repairing tracks and hauling slate extended a distance of more than a mile and a half from the entrance. There was testimony showing that it was the usual custom and practice for assistant foremen, when engaged in connection with repair or cleaning up work, to ride upon motors to and from the places of work. The appellant contends that the action of Lewis in riding on the motor was a violation of Special Rule 5 and General Rule 27 of the Bituminous Mining Law of 1911 (52 PS 1255, 1307) and sufficient to take him out of the course of his employment at the time of the injury.

Special Rule 5 of Article XXV of the Bituminous Coal Mining Act of June 9, 1911, P. L. 823, relating to the duties of motormen and locomotive engineers, provides that a motorman "shall not allow any person except his attendant to ride on the locomotive or on the full cars." General Rule 27 of the same article is, in part, as follows: "No person shall travel to and from his work except by the traveling way assigned for that purpose." A contravention of or failure to comply with these rules is declared by that act to be a misdemeanor (52 PS 1314). While we have, in a former case, commented on the fact that the violation of these rules was not made a crime upon the part of the laborer, nevertheless we said in the case of Gima v. Hudson Coal Co., 106 Pa. Superior Ct. 288, 293,

161 A. 903: "It is not even essential that the duty enjoined by statute which he [claimant] violated should have been declared by the legislature to be a criminal offense or misdemeanor. If it forbids the doing of a certain act, even though no criminal prosecution is provided for its violation, it is none the less such a law that its violation will forfeit compensation if because of it the workman is injured." In the case of Beshenick v. Pittsburgh Terminal Coal Corp., 110 Pa. Superior Ct. 156, 162, 167 A. 416, where Rule 5 was under consideration by us, we said: "But the fact that it might not have been possible to convict this claimant of a misdemeanor, for riding on the motor, does not control the question of his forfeiture of compensation ...... He was injured because he violated a statutory duty enjoined upon him and, therefore, his claim for compensation was properly disallowed." If the sole matter involved had been a violation of the law, then under the Beshenick case the claimant could not recover. We have, however, a recognized exception to the rule that one is taken out of the course of his employment when injuries are received in the commission of an act which is in violation of the law.

Under the Workmen's Compensation Act, an injury in the course of employment embraces all injuries received while engaged in furthering the business of the employer and injuries received on the premises of the employer, subject to the limitations that the employee's presence must ordinarily be required at the place of the injury or, if not so required, the departure of the servant from the usual place of employment must not amount to an abandonment of the employment or be an act wholly foreign to his usual work. "The incident necessary to constitute a break in the course of employment must be of a pronounced character. Though all the above essentials for compensation be present, 'course of employment' does not in-

clude (a) injuries received while away from the actual place of employment where the deviation or departure is wholly foreign to his duties, and amounts to an abandonment of employment; (b) injuries received in the commission of an act which is in direct violation of the law; or (c) an act contrary to the positive orders of the employer": Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480, 484, 139 A. 192. As was pointed out by Mr. Justice KEPHART in the case of Dickey v. P. & L. E. R. Co., 297 Pa. 172, 146 A. 543, these exceptions are general in their nature, are judicial rules in aid of construction to assist in a determination of the ultimate question as to whether one is injured in the course of employment, and are to be taken in a restricted sense, for, as is there shown, it is not all violations of positive orders that take one out of the course of his employment. To so hold would result in frequently releasing an employer where the employee has been guilty of negligent acts and even wilful misconduct, which is not the law. In the same manner this court has recognized an exception to the rule with respect to injuries received in the commission of an act which is in violation of the law. Such an exception is the case of Morell v. B. & S. C. & C. Co., 103 Pa. Superior Ct. 316, 158 A. 192. The ultimate question to be determined is whether the injured employee has by his conduct taken himself out of the course of his employment, and these general maxims must be considered in connection with the facts in the cases to which they relate.

We are all of the opinion that the finding of the referee and board that "at the time he received his fatal injuries he had not taken himself out of the course of his employment but was then in the course of his employment" is correct and that this case is controlled by the Morell case. There the claim was contested upon the same ground as here. Morell

was a coal loader and the employer provided a "man trip" for the purpose of transporting the employees from the bottom of a shaft to their working places at 6:45 in the morning, and a similar trip at 3:15 each afternoon to accommodate employees returning from their work. Morell went from his working place to the main road where a small motor was standing in charge of an operator of whom he asked permission to ride to the bottom of the shaft. About that time a large motor arrived on which were the superintendent, an acting mine foreman, and a fire boss. The fire boss informed Morell that if he could find room he could ride on the motor. This statement was made in the hearing of the superintendent, and the board found that the superintendent, foreman, and fire boss heard the motorman say he would take the decedent on his motor, knew that he made no protest and that there was no warning that such would be a violation of the law. This court there affirmed the action of the lower court and permitted a recovery, holding that Morell had not taken himself out of the course of his employment.

In the present case, while the decedent's position in the mine was that of an assistant foreman, he was subject to the directions of the mine foreman, Boyd, and before starting the day's work the four employees were directed by the mine foreman to haul slate and repair tracks and for that purpose to use the motor. It is true that this order was interrupted by a direction to Lewis to first go to another place with the cutters, but he was to join Royal and the other two assistant foremen in repairing tracks and hauling slate. We agree with the court below that the reasonable inference to be drawn from the instructions of the mine foreman that the four employees should take the motor to repair the tracks and do the hauling was that they were to ride the motor both in and out of the mine.

This, together with the instruction to Lewis that he should join the others later, amounted to a positive order which required two of the four men to ride on top of the motor. We have here the additional fact that this was an idle day in the mine when the men were engaged in repair work, and that this was not a case of employees departing from a usual and required course, but rather one in which it was customary for them to employ the motor in the way that it was used. The employment of a mine foreman is made compulsory and his control of the underground workings of a mine is as full and absolute as that given to the foremen in the anthracite mines: D'Jorko v. Berwind-White Coal Min. Co., 231 Pa. 164, 80 A. 77. As was said by Mr. Justice FELL in Durkin v. Kingston Coal Co., 171 Pa. 193, 33 A. 237, the mine foreman is not only in charge of the workings, but he represents the Commonwealth. The state insists on his employment under the police powers of the state for the security and comfort of the miners and invests him with power to compel compliance with his directions. To our minds it would be an abuse of legal maxims to hold that the positive orders of the mine foreman were overcome by the effect of the rules referred to. This case is controlled by the Morell case and not by the Beshenick case. "The defendant should not be permitted to play fast and loose with the rules—condone their infraction by the officials charged with their enforcement and then set them up as a bar against recovery of compensation by the dependents of an employee killed while traveling from his work in a manner to which they had given their assent and approval": Morell v. B. & S. C. & C. Co., supra, p. 324.

We are likewise of the opinion that Rule 27, first referred to, has no application for the reasons that, while there is evidence that there was a path along the track at the point where Lewis was injured, there is

no evidence that this was assigned or designated as a traveling way either specifically or by custom, and that the decedent was not traveling on foot but by motor. In fact, he was traveling in the "way assigned" to him by the official representative of the company.

The judgment of the lower court is affirmed.