## Krause v. Russell

*George L. Reed,* for petitioner.

*M. Louise Rutherford,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for defendant.

HARGEST, P. J., February 23, 1940. — This matter comes before us upon a petition for a writ of alternative mandamus, to which a return was filed and a demurrer filed to the return.

The question raised is whether a person in all other respects qualified to receive a blind pension, under the Public Assistance Law of June 24, 1937, P. L. 2051, in order to obtain the same, must file a bond as required by the Department of Public Assistance. The facts are not disputed.

Michael Krause, Jr., petitioner, a resident of Philadelphia, is a blind person, qualified under the act to receive the assistance provided, and since 1934 has received such

assistance. On or about September 6, 1939, he was advised by the Philadelphia County Board of Assistance that his pension was discontinued because of his refusal to sign a bond. The form of bond prepared by the department is in the sum of $500, recites the application for assistance, does not require a surety, and is conditioned that if the facts alleged or verbal representations made are true, in the absence of fraud or misrepresentations, and if the applicant shall notify the agency of all changes of fact which would render him ineligible, then the obligation is to be void. The form also contains a confession of judgment in the usual form, with inquisition waived, and with 15 percent added for collection fees. Petitioner, through his counsel, demanded the pension and was refused by the Secretary of the Department of Public Assistance because of his refusal to give a bond.

## Discussion

The Public Assistance Law, supra, provides, in section 2:

"The word, assistance, shall be construed to include pensions for those blind persons who are entitled to pensions, as provided in this act." Section 4 provides, in part:

"The Department of Public Assistance shall have the power, and its duty shall be . . .

"(b) To establish, with the approval of the State Board of Public Assistance, rules, regulations and standards, consistent with law, as to eligibility for assistance and as to its nature and extent;

"(c) To supervise the local boards, and to establish for such boards, rules, regulations and standards, consistent with law". Section 6 provides:

"The State Board of Public Assistance shall have the power to promulgate rules and regulations concerning the administration of this act, including the establishment of standards of eligibility for assistance, and its nature and extent.

"The county boards shall determine the eligibility of an applicant, under the standards so established, subject to the right of appeal, as provided under subsection (d) of section seven of this act". Section 9 provides:

"Eligibility for Assistance.—Except as hereinafter specifically otherwise provided in the case of pensions for the blind, all persons of the following classes shall be eligible to receive assistance, in accordance with rules, regulations and standards established by the department of Public Assistance, with the approval of the State Board of Assistance, as to eligibility for assistance, and as to its nature and extent". Section 13 provides:

"Any person who, by means of a wilfully false statement or misrepresentation, or by impersonation or other fraudulent means, secures, or attempts to secure, or aids or abets any person in securing assistance under this act shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding one thousand dollars ($1000.00), or to undergo imprisonment not exceeding one year, or both, at the discretion of the court, and also may be sentenced to make restitution of any moneys he has received by reason of any such false statement, misrepresentation or fraudulent means."

The precise question is whether the power vested in the Department of Public Assistance to establish rules, regulations and standards consistent with the law, authorizes a rule requiring the applicant for a blind pension to give a bond.

In 11 Am. Jur. 955, §240, it is said:

"The policy of the law favors the placing of detailed responsibility in administrative officers. The courts uphold statutes vesting such powers in such officers if it is possible fairly to do so, at least where the powers are merely ministerial."

The tendency of the times, because of the increasing complexity of our living conditions, is to govern through boards, bureaus, and commissions, and experience has shown that such governmental agencies are apt to take

unto themselves more power than was intended to be vested in them. The courts on the one hand must see that such powers are not unlawfully asserted against the rights of individuals. On the other hand, the courts should sustain whatever authority is fairly vested in such administrative agencies which is necessary to the efficient administration of the powers which the legislature has clearly conferred upon such agencies: 16 C. J. S. 399 §140.

In Rohrer v. Milk Control Board, 322 Pa. 257, 277, it is said, with reference to the Milk Control Board Law of January 2, 1934, P. L. 174:

"It [the legislature] has not delegated its power to make law, but has delegated the power to determine facts and apply the intention of the legislature to conditions thus determined. To make use of an agency adapted to put into effect the details which it would be impracticable for the legislature to look after is not making the agent a legislative body, nor acting in violation of the constitutional provision".

In Gima v. The Hudson Coal Co., 106 Pa. Superior Ct. 288, 298, the court said:

"The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation."

The legislature might well have included the requirement of a bond as a prerequisite to secure a blind pension, but is the absence of such requirement in the statute sufficient to justify the court in holding that the Department of Public Assistance cannot require it, under the power to

establish rules, regulations and standards? We cannot shut our eyes to the fact that experience shows that, in matters of this kind, there is much "chiseling". This act contains a penal section which not only requires prosecution for false statement or other frauds in securing or attempting to secure assistance, but also requires restitution of any moneys received by fraudulent means.

The bond required is not a hardship. It imposes no expense upon the applicant. He incurs no debt, unless by his own fraud he has obtained illegal assistance, and we are not prepared to say that the requirement is unreasonable and is not within the power given to the board "to promulgate rules and regulations concerning the administration of this act, including the establishment of standards of eligibility".

We are rather inclined to think that this is a detail in the administration which is reasonable. As pointed out by defendant, "the statute does not expressly provide for the fraud bond; but neither does it provide for an application blank. It does not provide for the number of offices where applications may be taken, nor for the number of interviewers or investigators to be employed", and many other details which necessarily must be left to the discretion of the board.

It is argued that section 9, if properly construed, does not authorize the Department of Public Assistance to make any rules, regulations and standards for pensions for the blind. Section 4, prescribing the general powers and duties of the Department of Public Assistance, provides, in paragraph (b): "To establish, with the approval of the State Board of Public Assistance, rules, regulations and standards, consistent with law, as to eligibility for assistance and as to its nature and extent". Other detailed duties of the board are set out.

The right to "promulgate rules and regulations concerning the administration of this act, including the establishment of standards of eligibility for assistance, and its nature and extent", is repeated in the first paragraph

of section 6. Section 9 provides: "[Except as hereinafter specifically otherwise provided in the case of pensions for the blind], all persons of the following classes shall be eligible to receive assistance, in accordance with rules, regulations and standards established by the Department of Public Assistance . . . ".

This statute was before the legislature of 1939 for amendment. The report of the conference committee, printer's no. 995, shows that the first sentence, which we have bracketed above, was proposed to be eliminated, but there was a new conference committee, printer's no. 1001, which restored that sentence, so that the act, amended in many other respects, was not amended as to the first paragraph of section 9. From this it is argued that, by rejecting the first conference report and adopting the second, which left the first paragraph of section 9 precisely as it appeared in the Act of 1937, the legislature intended that the rules to be adopted were not applicable to pensions for the blind. We cannot agree with this contention. Paragraph (c) of section 9 relates to blind persons and specifically prescribes five qualifications or standards necessary to make blind persons eligible for a pension. These qualifications do not apply to other persons eligible for assistance, so that in making rules, regulations and standards applicable to the other persons eligible for assistance, they might also be applicable to blind persons who could not qualify. Therefore, the exception in the first sentence of section 9 clearly means that the rules, regulations and standards shall not be applicable to blind persons, "Except as hereinafter specifically otherwise provided". To hold that that language means that there is no authority to make rules, regulations or standards in the case of blind persons and contrary to such general authority given in sections 4(b) and 6, would clearly be an erroneous interpretation of the act.

For these reasons, we are of opinion that relator is not entitled to a mandamus.

And now, February 23, 1940, the alternative writ of mandamus heretofore granted is hereby discharged, and the petition, therefore, is hereby dismissed, at the cost of relator.