Kozak, Appellant, *v.* Joseph Reilly Coal Company et al.

Argued April 18, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*George Jerko,* with him *Barnhart & Adams,* for appellant.

*Francis A. Dunn,* for appellees.

OPINION BY CUNNINGHAM, J., October 4, 1940:

In this workmen's compensation case the referee made, and the board affirmed, an award of compensation to Martin Kozak, claimant below and appellant herein, under Section 306(c) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended April 13, 1927, P. L. 186, 77 PS §513, at the rate of $13.44 per week for a period of one hundred and twenty-five weeks, for the permanent loss of the use of his right eye.

Upon the appeal of the employer and its insurance carrier to the court below, their exceptions were sustained, the action of the board reversed, and judgment entered in favor of the employer; hence, the present appeal by claimant from that judgment.

While we do not agree with some of the grounds stated in the opinion of the court below, by GREER, J., we are convinced the judgment is right and should be affirmed. No material facts are in dispute and the controlling question of law involved is whether appellant at the time of his accidental injury on March 5, 1937, was violating any of the provisions of the Bituminous Mining Act of June 9, 1911, P. L. 756, 52 PS §§701-1393. If he was, he thereby took himself out of the "course of his employment" and is not entitled to any compensation.

Our Supreme Court definitely stated in *Shoffler v. Lehigh Valley Coal Co.,* 290 Pa. 480, 139 A. 192, that "course of employment" does not include, "(a) injuries received while away from the actual place of employment where the deviation or departure is wholly foreign to his duties, and amounts to an abandonment of em-

ployment; (b) injuries received in the commission of an act which is in direct violation of the law; or (c) an act contrary to the positive orders of the employer."

The record discloses these uncontroverted facts: Appellant was employed by the defendant coal company solely as a "loader" in its mine at Spangler. On the day of his injury he had loaded five mine cars and was desirous of having them removed from the heading in which he was working and replaced with empty cars.

The motor used to haul cars was down in the main entry, near the switch leading into the heading, in charge of a motorman and a "spragger," or brakeman. It could not be coupled to the loaded cars ready for removal because of the presence, between them and the switch, of an electrically operated cutting machine. This machine "is placed on a truck which has four wheels and there is a chain drive from the cutting machine to these wheels which move [the machine] from place to place throughout the mine." The power for the operation and transportation of the cutting machine is obtained by making a contact with the trolley wire. The movements and operation of the cutting machine were under the exclusive control of Robert Mitchell and his brother, employed as "cutters." During the intervals when no cutting was required they worked at loading cars and were so engaged in another heading about one hundred feet away from the one in which appellant was working.

Instead of summoning the cutters to move the machine, appellant, although he had never operated it before, mounted the machine, turned on the controller, placed the "nip", a piece of bare wire about twelve inches long, on the power wire and moved the cutter along the track to a point beyond the switch. After throwing the switch he transferred the machine to the track in another heading, covering a total distance of about twenty-five feet.

During this process, flames jumped from the point of contact with the trolley wire two or three times as appellant held the cable and nip and slid it along the wire only a short distance from his face. Immediately thereafter he experienced difficulty with his vision, a fellow worker's lamp appearing to him to have various colored lights around it. Although medical treatment by the company doctor was begun on the following day, at which time appellant's right eye showed a sluggish reaction to light, a cataract developed upon it and its use was lost.

Under these facts we may eliminate from our consideration subparagraphs (a) and (c), above quoted from the opinion in the Shoffler case. Appellant was not away from his "actual place of employment," nor had any "positive orders" been given by the employer to appellant, or "loaders" in general, against meddling with cutting machines or their attachments. This employer was under no obligation to issue orders relative to matters expressly commanded or forbidden by the law governing bituminous mining.

Nor are we here concerned with the qualification of subparagraph (c) made by the Supreme Court in *Dickey v. Pittsburgh and L. E. R. R. Co.*, 297 Pa. 172, 146 A. 543. That subparagraph of the Shoffler case relates solely to violations of orders of the employer. *Karchut v. Helvetia Coal Mining Company*, 110 Pa. Superior Ct. 200, 168 A. 375, and kindred cases involving violations of orders are not applicable to the facts of the present case.

We accordingly take up the inquiry whether those facts bring the case at bar under subparagraph (b) of the Shoffler decision, i. e., whether appellant's injury was "received in the commission of an act which [was] in direct violation of the law"?

The employer and its carrier refer to General Rule 12

of Article XXV of the Bituminous Mining Act of 1911, supra, 52 PS §1292, as a provision of law violated by appellant; it reads: "All persons are forbidden to meddle or tamper in any way with any electric or signal wires, or any other equipment in or about the mine."

In mounting and undertaking to move the truck carrying the cutting machine appellant became a "meddler" with the electric wires and other equipment connected with its operation, i. e., "one who interfered or busied himself with things in which he had no concern:" Webster's New International Dictionary, 1931 Ed. He was totally inexperienced in its operation or transportation, and had no duties to perform on or around it. As it was obviously a dangerous instrumentality, when in unskilled hands, its operation and transfer from one part of the mine to another had been expressly assigned to the Mitchells, who were within call.

Another applicable provision of the statute is Section 1 of Article XXVI, reading in part: "Any person who shall intentionally or carelessly, ...... or without proper authority, handle [or] remove ...... any ...... machinery ...... or do any other act whatsoever, whereby the lives or the health of the persons employed, or the security of the mine or the machinery, are endangered, shall be deemed guilty of a misdemeanor, and shall be punished as provided in section two of this article."

Here, appellant "handled" and "removed" machinery "without proper authority." Its "security" was "endangered" while it was in his possession and it became a menace to the safety and lives of other employees, as well as a source of injury to himself. Cf. *Pokis v. Buck Run Coal Co.*, 286 Pa. 52, 132 A. 795.

The only excuse offered by appellant for meddling with the cutter was that when he told Bine Daisley, the spragger (brakeman) on the nearby motor, that the

cutting machine had been left by the cutters "right in front of the loads," Daisley replied, "You go up and move it." Daisley positively denied appellant's statement, thereby creating the only conflict in the testimony. The referee adopted appellant's version of the incident but attached undue weight to it. It is argued in behalf of appellant that his violation of the statute should be condoned because he acted "at the instance and request of the spragger of defendant's motor." There is no merit in this contention. Assuming that Daisley did tell appellant to move the machine, he had no authority to give such a direction. We have clearly indicated in a number of decisions that no person other than a superintendent or mine foreman has such authority. See *Morell v. Buffalo & Susquehanna Coal & Coke Company*, 103 Pa. Superior Ct. 316, 158 A. 192; *Lewis v. Pittsburgh Terminal Coal Corporation*, 113 Pa. Superior Ct. 540, 173 A. 859; *Chulick v. Logan Coal Co.*, 113 Pa. Superior Ct. 551, 173 A. 862; and *Beshenick v. Pittsburgh Terminal Coal Corporation*, 110 Pa. Superior Ct. 156, 167 A. 416.

We think this case is ruled against appellant by *Shoffler v. Lehigh Valley Coal Co.*, supra. The decedent in that case was employed as a spragger in moving cars. His duties were to see that the empty cars were let down from a "rim" to a "depression," and to sprag loaded cars dropped from the head of the slope, oil the sheave wheels and clean up around the plant. A locomotive, used in hauling empty cars, had been left standing by the engineman. The decedent went on board, started the locomotive backwards, crashed into some cars, upset the engine and was killed. The Supreme Court denied compensation to his widow on the ground that the decedent was guilty of a violation of Rule 25 of the Anthracite Mining Law, in that he handled without authority a machine causing life to be endangered, and property damaged.

In the course of the opinion Chief Justice KEPHART said (page 486): ". . . . . . while the cause and time of his death were well within the act, and the place was not unreasonably far from the usual place of employment, and deceased may have been endeavoring to further his master's business, yet his act in setting the machinery in motion was a violation of the law, and forfeited the right to compensation."

Cases involving violations of statutory enactments are in a class by themselves and must not be confused with those involving abandonment of usual employment or the violation of positive orders. In *Haywood v. Henrietta Coal Co.*, 118 Pa. Superior Ct. 371, 377, 180 A. 34, this court said: "While an activity which is in direct violation of law may, or may not, be at the same time foreign to the course of employment, such violations constitute a separate category and bar the employee's right to compensation." See also *Gima v. Hudson Coal Co.*, 106 Pa. Superior Ct. 288, 161 A. 903, (affirmed by the Supreme Court in 310 Pa. 480, 165 A. 850); *Demark v. Pittston Company*, 131 Pa. Superior Ct. 49, 198 A. 818; and *Welsch v. Pittsburgh Terminal Coal Corporation*, 303 Pa. 405, 154 A. 716.

Upon an examination of this record, several subsidiary questions present themselves—whether the medical testimony as to causal connection is sufficiently definite and whether it has been shown that the loss of the use of appellant's eye is permanent. In view of our conclusion upon the controlling issue, it is unnecessary to consider these additional questions and we express no opinion upon them.

Judgment affirmed.