Ginther, Appellant, *v.* J. P. Graham Transfer Company et al.

Argued April 23, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

George A. Baldwin, with him George A. Baldwin, Jr., of Baldwin & Baldwin, and Wayne S. Luce, for appellant.

James J. Burns, Jr., with him Lawrence M. Sebring, and Gustav M. Berg, for appellee.

OPINION BY BALDRIGE, J., July 23, 1942:

This appeal is from the order of the court below reversing an award granted by the workmen's compensation board in favor of the widow of Carl Ginther, deceased.

Ginther was regularly employed by the J. P. Graham Transfer Company as a mechanic and a truck driver. He left the transfer company's loading dock and warehouse at Rochester, Beaver County about 12:30 A.M. on the morning of February 14, 1939, to deliver two

cartons of envelopes to the Townsend Company at Falls-ton, a distance of about two and one-half miles. Ginther was accompanied by Robert D. Copper and William Romigh, part time employees of the transfer company, who were at the loading dock, but neither of them was on duty that night.

Ginther, who when the trip began was at the wheel, when within a short distance of Fallston instead of following the direct route by turning to the left, drove straight ahead for a distance of about one-half mile to the Clyde House where he and Romigh had a few drinks. In about twenty minutes the men returned to the truck. Upon leaving the Clyde House Ginther permitted Romigh, at his request, to drive, and Copper sat in the middle, with Ginther on the right side, of the driver's seat. The merchandise was delivered and the route taken on the return trip was the same as formerly followed. Copper testified that when they were near the Clyde House Ginther told Romigh to stop the truck. Ginther then went to assist a friend whose car was stalled. The trip was soon resumed and when the truck, running about thirty-five miles per hour, reached a point on the direct route where there was a short turn through a railroad underpass, Ginther said to Romigh: "You're going too fast, slow up." Romigh failed to negotiate this turn and the truck crashed into an abutment and the injuries that Ginther sustained proved fatal.

The referee concluded that Ginther, when he sustained his fatal accidental injuries at about 2:00 A.M., was in the course of his employment and awarded the widow and two children compensation. The board vacated and set aside two of the referee's findings of fact and his third conclusion of law, substituting in lieu thereof its own, but affirmed the referee's award and dismissed the employer's appeal.

The insurance carrier asserts that the claimant is

not entitled to an award for the following reasons: (1) Ginther violated specific orders of his employer which forbade the use of intoxicating liquors by employees while on duty and the carrying of passengers on the truck; (2) the deviation of one-half mile to the Clyde House removed Ginther from the course of his employment at the time of the accident; and (3) in permitting Romigh to drive the truck Ginther took himself out of his employment and became a trespasser and a stranger.

The court below in a clear and comprehensive discussion of these questions ruled against the insurance carrier on the first two, but upheld the third contention, reversed the board and denied claimant compensation. We are in entire accord with the court's views respecting the first two propositions advanced but disagree with the conclusion reached as to the third.

The insurance carrier cited cases including *Shoffler v. Lehigh Valley Coal Co.*, 290 Pa. 480, 139 A. 192, and *Dickey v. Pittsburgh & Lake Erie R. R. Co.*, 297 Pa. 172, 146 A. 543, which hold that an employee is not in the course of his employment when he is engaged in an act contrary to the positive orders of the employer. The Supreme Court in the Dickey case gave warning, however, that this rule does not apply in all cases; it must be considered in connection with the facts in the case in hand, stating p. 175: "Care must be taken not to confuse the principle enunciated, with ...... those acts in disregard of positive orders of the employer where the employee's duties included the doing of the act that caused the injury, or where his duties were so connected with the act that caused the injury that, as to it, he was not in the position of a stranger or trespasser. The violation of positive orders under these circumstances does not prohibit compensation for injuries sustained therefrom." The court then contrasts injuries sustained under the circum-

stances similar to those before us and those resulting from acts which are in direct defiance of positive orders of employers concerning instrumentalities, places, or things about, or on which, the employee has no duty to perform and with which his employment does not connect him. The principles laid down in the Dickey case have been followed in a number of later cases including *Karchut v. Helvetia Coal Mining Co.*, 110 Pa. Superior Ct. 200, 168 A. 375, and *Lewis v. Pittsburgh Terminal Coal Corporation*, 113 Pa. Superior Ct. 540, 173 A. 859.

As the learned court below stated: "There is no question under the evidence that it was the duty of Ginther to operate the defendant's truck in making the delivery to the Townsend Company on the occasion in question. So long as operating the truck for this purpose he was in the course of his employment, even though he violated the rules of the employer above stated. The violation of these rules did not bring him into the place where his employment did not call him, and did not involve the use of an instrumentality which was foreign to his employment and which he was forbidden to use. The violations charged in the present case had no causal relation to the fatal accident."

Nor was the deviation by Ginther going out of his direct course or the help rendered a friend in fixing his car such a departure from his work that it must be considered that when the accident occurred he was out of the course of his employment within the contemplation of our compensation laws.

Appellant directs our attention to Section 237, Restatement, Agency, reading as follows: "A servant who has temporarily departed from the scope of employment does not re-enter it until he is again reasonably near the authorized space and time limits and is acting with the intention of serving his master's business." In "Comment a" it is stated that if "the servant de-

parts too far from the space or time limits, he no longer acts within the scope of employment. The same rule applies to re-entering the employment. He cannot re-enter it, however much he desires it, until he is within the flexible limits of employment. This does not necessarily mean that he must return to the point from which he diverged when beginning to act for a purpose of his own. *As he may make a detour for his own purposes without ceasing to be in the scope of employment, so in returning to the service he may re-enter the employment before reaching the limits fixed in his authorization."* (Italics supplied.)

This accident occurred, as above noted, when the truck was on the road where it would have been if he had followed the direct route and was within one-half mile of the employer's loading dock or warehouse.

We think this case comes within those cases of which *Webb v. North Side Amusement Co.,* 298 Pa. 58, 147 A. 846, is an example. In the Webb case the claimant's husband was a chauffeur for the North Side Amusement Company and was acting as a private chauffeur and houseman for the company's general manager Friedberg. Friedberg went to New York to inspect a motion picture machine and returned home by way of Atlantic City where he remained for two days for recreational purposes. On the route home to Pittsburgh, Webb and Friedberg were killed. Payment of compensation to Webb's widow was resisted on the ground that the trip to Atlantic City constituted a deviation from his employment or business. The court said that notwithstanding Atlantic City was not the shortest or most practical route for the return trip from New York to Pittsburgh, when the accident occurred Webb was on the most used and probably shortest car route between those two points, and as the homeward trip was a necessary part of the business, the compensation authorities were not re-

quired to hold that at the time of the accident the deviation in Atlantic City was being continued.

The compensation board was justified under the facts in this case in concluding that Ginther by the deviation in his route of travel had not taken himself out of the course of his employment at the time of the fatal injuries.

That brings us to the consideration of the third question involved in this appeal. Did Ginther, in permitting Romigh, a competent driver, to operate the truck which he had driven previously, abandon his employment at the time of the accident so that it would bar claimant from recovering compensation.

In approaching this question, admittedly a close one, we must keep in mind that the Workmen's Compensation Act, being remedial legislation, must be given a liberal construction: *Ottavi v. Timothy Burke Stripping Co.,* 140 Pa. Superior Ct. 389, 395, 14 A. 2d 188. Ginther, as above noted, remained on the seat occupied by the driver, directed the operation of the truck, and apparently watched the manner Romigh was driving. It cannot be said that he had forfeited or lost control of this truck or abandoned his employment and became a trespasser so that he was not engaged in the furtherance of his employer's business at the time of the accident. If he had left the truck or was in the rear of it asleep, permitting one, whom he knew to be incompetent, to drive in his place we would be confronted with a different proposition.

While no Pennsylvania case has been cited and we have found none with facts paralleling those before us, in other jurisdictions there are cases where the attending circumstances were similar to those before us. In *Employers' Liability Assurance Corporation, Ltd., of London, England v. Industrial Accident Commission,* (36 Cal. App. 568) 177 P. 171, the driver of a street flushing motor truck was injured when he per-

mitted an experienced driver, though not an employee to drive the truck. The regular driver fell off the truck when he attempted to pick up a wrench lying on the running board. It was held by a divided court that the claimant remained in the course of his employment. True, the California compensation laws, unlike ours, require the accident to arise out of, or be caused by, the employment but this point was not involved in the decision.

In *Byam v. Inter-State Iron Co.*, (190 Minn. 132) 250 N. W. 812, a driver permitted an unauthorized helper to drive and was injured. Compensation was allowed. In *Kopp v. Bituminous Surface Treating Co.*, (179 Minn. 158) 228 N. W. 559, the driver fell from the running board after allowing a 15 year old lad to drive in his place. The court held that the driver did not abandon his employment when he permitted another to do the actual driving while he was in the vehicle and had control thereof.

Possibly the closest case we have is *Siglin v. Armour & Co.*, 261 Pa. 30, 103 A. 991. There a helper on a truck gave his seat to two girls picked up at his instance, and fell off the running board where he was standing. The court held he was entitled to compensation.

The order appealed from is reversed and the record remitted so that judgment may be entered on the award made by the board.