## Beshenick, Appellant, v. Pittsburgh Terminal Coal Corporation.

Argued May 8, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

S., V. Albo, for appellant.

Sidney J. Watts of Baker and Watts, for appellee.

Opinion by Cunningham, J., July 14, 1933:

The claimant, a miner in the employ of the defendant corporation, was injured while traveling underground from the place of his employment towards the bottom of the shaft. His claim for compensation was contested upon the ground that at the time his injuries

were received he was violating Special Rule No. 5 of Article XXV of the Act of June 9, 1911, P. L. 756, 823, designed "to provide for the health and safety of persons employed in and about the bituminous coal mines of Pennsylvania."

This rule prescribes, and governs the performance of, the duties of a motorman or locomotive engineer; it provides, inter alia, that "he shall not allow any person except his attendant to ride on the locomotive or on the full cars." By Article XXVI, it is enacted that any person who violates any of the provisions of the act shall be guilty of a misdemeanor and, upon conviction, punished as therein provided. It was contended by the coal company that claimant was riding upon an electric motor locomotive in violation of the rule.

Beshenick's claim for compensation was disallowed by the referee; the board affirmed and adopted the referee's findings of fact and conclusion of law; the court below dismissed claimant's exceptions and entered judgment in favor of the employer; and the employe now appeals from that judgment.

The referee's third and fourth findings of fact are rather lengthy and involved, but it is not contended that they are not supported by competent evidence; they read:

"Third. The claimant had completed his day's work at about 3:30 P. M. and walked some distance to a switch or siding on the main haulage road, over which loaded trips were taken to the shaft bottom and empty cars returned, and while at this point he engaged in conversation with a fellow workman for approximately fifteen minutes. The testimony discloses that the defendant furnished a special trip, known as a man trip, consisting of a locomotive and a number of empty cars for the purpose of conveying the miners from this point and other points in the mine to the shaft bottom

each working day, the trip leaving its terminal about 4:10 or 4:15, but it appears from the testimony that in order for the claimant to have taken this trip out he would have been compelled to wait for about thirty minutes. Instead of doing this, when the loaded trip came along in charge of one Edward Kosky, the motorman, and a Mr. Alex Shanter, his attendant, ......, the claimant, then at a point about 4,000 feet from the shaft bottom, boarded the back part of the motor where he was compelled to lie flat in order to escape the clearances. It appears also from the testimony that two other men were also on this motor, other than the claimant, the motorman and snapper, one of these men was John Borak, the road or trackman, and it appears that the motorman had knowledge that the said Borak was on the motor; ...... while they were on this motor on the way to the bottom of the shaft, the claimant being on his way home, having finished his day's work, one of the extra men on the motor in some way pushed the claimant's face with his rubber boot and the claimant raised his head and was struck by an overcast, sustaining a fracture of the pelvis, contusion of the scalp and fracture of three or four ribs, and was sent to St. Joseph's Hospital. ...... He remained in the hospital from November 21, 1929, to December 28, 1929, and had sufficiently recovered to resume light employment on April 8, 1930, but it appears that he has not yet returned to work and established his earning capacity.

"Fourth. The defendant had posted at the mine in conspicuous places large placards printed in five languages, quoting the general and special rules incorporated in the Bituminous Mining Laws of Pennsylvania, [including] Rule 5, which provides that no locomotive engineer or motorman shall permit any person other than his attendant to ride upon the same or upon loaded cars. The claimant speaks and reads the

English language and had been employed as a miner for quite a number of years, and it is our opinion that he was familiar with these rules and regulations. The claimant has testified that the motorman had knowledge that the claimant was on the motor and permitted him to be on the motor and that it was the common customary practice to ride on the motor. We think this is controverted by a number of witnesses on behalf of the defendant. The motorman has testified that he did not know that the claimant was on the motor but that he did know that the trackman had placed his tools on the motor and was riding on the motor to a hurry-up job. In any event, it is our opinion that since the defendant provided safe and proper methods of egress and ingress to the working places in the mine, as contemplated by the statute and mining rules, [and] posted notices embracing the provisions of Rule 5, . . . . . . in five languages, . . . . . . that the claimant knew that employes other than the motorman and his assistant were not permitted and were forbidden by the company to ride either on the motor or on loaded trips, and that the claimant . . . . . . was a trespasser when he boarded this motor and thereby committed such a willful act as to take him out of the course of his employment, and, that while at the time of the accident he was injured on the premises of the defendant, his presence was not required at the place where the accident occurred by reason of the nature of his employment."

Upon these facts the referee and board reached the conclusion of law that claimant was not entitled to compensation for his injuries.

The court below, in the opinion supporting its judgment, written by McNaugher, J., said, "After examination of the testimony taken before the referee we find that there is ample evidence, first, that claimant was riding the locomotive without the knowledge of

the motorman and without the consent of any one, and second, that claimant's presence on the locomotive at the time was an act prohibited both by statute and rule of the mine. Accordingly, the conclusion reached that the claimant is not entitled to compensation cannot be disturbed.''

Upon petition of claimant, we permitted this appeal to be presented in forma pauperis. His counsel contends, in his brief, that this case should be ruled by Morell v. Buffalo & Susquehanna C. & C. Co., 103 Pa. Superior Ct. 316, 158 A. 192, and suggests that, as the board did not have the benefit of that decision when it acted, the record should have been remitted to it for further consideration. There is no merit in this contention; the controlling facts here present differ radically from those upon which the decision in the case cited was based.

Referring to the Morell case, the court below correctly said, ''There the claimant's decedent was riding on the motor with the consent and approval of defendant's [highest operating officials] and practically at their direction; while here there is a finding, supported by testimony, that claimant was riding the locomotive or motor without permission and without the motorman's knowledge.''

Under the facts in that case, including the admission at bar that neither the motorman nor any of the operating officials participating in the violation of the rule had been dismissed or prosecuted, we were justified in saying of the defendant therein: ''[It] should not be permitted to play fast and loose with the rules— condone their infraction by the officials charged with their enforcement and then set them up as a bar against recovery of compensation by the dependents of an employe killed while traveling from his work in a manner to which they had given their assent and approval.''

In the case now at bar, the motorman, who knew that at least one unauthorized person was riding on the motor, was dismissed and prosecuted.

Another contention advanced by counsel for appellant is that, as the rule in question is directed primarily against the motorman, he alone could be convicted of a criminal offense. This aspect of the rule was alluded to by us in the Morell case at page 322; but the fact that it might not have been possible to convict this claimant of a misdemeanor, for riding on the motor, does not control the question of his forfeiture of compensation.

In Gima v. Hudson Coal Company, 106 Pa. Superior Ct. 288, 161 A. 903, (affirmed by the Supreme Court, upon the constitutional question involved, 310 Pa. 480) KELLER, J., speaking for this court, said, "It is not even essential that the duty enjoined by statute which he (claimant) violated should have been declared by the legislature to be a criminal offense or misdemeanor. If it forbids the doing of a certain act, even though no criminal prosecution is provided for its violation, it is none the less such a law that its violation will forfeit compensation if because of it the workman is injured." See also Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480, 139 A. 192; and Dickey v. Pittsburgh and Lake Erie R. R. Co., 297 Pa. 172, 146 A. 543.

By the statute here involved, the legislature has sought to provide for the safety of bituminous miners; one of the duties enjoined upon them is that they shall not ride upon the motors or locomotives operated in the mine; the danger is obvious and the unfortunate experience of this claimant illustrates the necessity for a strict observance of the rule. He was injured because he violated a statutory duty enjoined upon him and, therefore, his claim for compensation was properly disallowed.

Judgment affirmed.