(No. 6581.   April 5, 1939.)

DONALD C. POTTER, Employee-respondent, v. REALTY TRUST COMPANY, Employer, and NORTHWEST INDEMNITY EXCHANGE, Appellants, B. P. O. E., NAMPA LODGE No. 1389, Employer, and STATE INSURANCE FUND, Surety, Defendants.

[90 Pac. (2d) 699.]

Ralph S. Nelson and J. R. Smead for Appellants.

Geo. H. van de Steeg, for Respondent.

AILSHIE, C. J.—Respondent, vice-president of the Realty Trust Company, had been employed about nine years as a salesman and solicitor for the company and for two years held the position of secretary of the Elks Lodge No. 1389 of Nampa. He worked on a commission basis for the trust company and

his average income "was over $50 a week" (compensation for year preceding accident was $2,630.25). His salary from the Elks Lodge was $25 a month. He was employed by the Realty Trust Company "for twenty-four hours a day" and "seven days" a week, "whenever the best interests of his employer required it." The employer paid for the license of his car and also "for the gas and oil used therein, and for its repair and up-keep." Respondent's father (president of the trust company) testified as to the nature of the son's duties for the company; that he had "been doing about the whole thing. He is salesman, solicitor and the executive duties of a little real estate business don't amount to much." That he and his son own the stock of the company and the secretary has two or three shares "to qualify and sign policies." He and his son "set up a salary and then allow him [respondent] about 25% and commission at end of year."

In the evening of Sunday, December 26, 1937, some time after ten o'clock, respondent was handed some membership dues at the Elks Club and walked over to the Realty Trust Company's office (where he kept the books) in order to make a record of the dues and deposit the money in a safe. Having forgotten his keys, he drove home to get them. Guests were there at the time who remained until about twelve-thirty at night or later. After the guests left respondent drove his car out of the garage and east on 9th Street. At the intersection he turned to the right to avoid colliding with an automobile traveling south on Eleventh Avenue and turning to the left on 9th Street. Before he had completed the turn, a second car, directly behind the first car on Eleventh Avenue and apparently attempting to pass it, approached the intersection "at an excessive rate of speed." Respondent "continued on south on Eleventh Avenue and on the left hand side of the street in order to permit this second car to pass" on his right. He testified that it was impossible for him to stop at the intersection as he "would have been rammed into by the other car because it was going at too great a speed" for him "to do other than to get out of its way." Respondent had "no recollection what speed" he was going when his car "hit the tree." He was familiar with the city traffic laws,

etc. While looking to the right over his shoulder to see the other car, respondent's car struck a tree in the parking on his left approximately 75 feet south of the intersection; the front of his car was crushed, the steering wheel and windshield broken and he received serious injuries as a result of the accident. From December 27th to February 15th he was totally disabled for work and partially disabled from the latter date to February 25th, and has a permanent disability consisting of the loss by enucleation of one eye. He has incurred expenses in the sum of $737.50 for medical attendance, hospital and other services.

The cause was heard before the Industrial Accident Board and an award was granted respondent against the Elks Lodge and its surety and Realty Trust Company and its surety, for *pro rata* reimbursement for expenses incurred and compensation for total temporary disability and permanent partial disability. From the award and order of the board, the Trust Company and its surety have appealed.

At the trial an attempt was made by appellant to prove that claimant was intoxicated when the accident occurred. There is evidence to the effect that he had had a few drinks during the course of the evening (consisting chiefly, if not all together, of beer). The board, found, however, and there is evidence sustaining the finding, that claimant was not intoxicated when the accident occurred.

Two of appellants' assignments of error are directed against the board's refusal to admit Defendant's Exhibit 13, a police report given by officer Wakefield in the early morning (2 or 3 hours) after the accident. At the trial the witness Wakefield was called by the company and testified, among other things, that he "thought at the time," that Potter had an odor of liquor on him but "wouldn't swear to that as a fact." He also testified that he made a statement shortly after he was called to the place where the accident occurred and left it on the desk of the chief of police. Counsel identified the paper and offered it in evidence. It was rejected by the board and thereupon he offered to prove that the report contained the following statement:

.

"Chief: I passed the hospital at five o'clock this A. M. and doctor and nurses were at work in the operating room. It may be that Donald Potter was hurt worse than we thought, though he recognized us, and talked quite coherently. He walked up the ramp at the hospital and down the hall to the elevator. His main concern was for his wife whom he insisted was with him at the time of the accident, also wanted to know where the rest of the gang were. His wife said she drove the car into the garage and scraped a fender, and he was sore about this and went out to see how bad it was and got into the car and drove away. This was the last she saw of him till he was in the hospital. He had been drinking but we could not find a bottle."

Objection to this offer was also sustained. After the case was closed and the board came to making findings of fact, they found as follows:

"That at the time the claimant turned south at the intersection at 9th Street and 11th Avenue, as above stated, and ran into the tree on the left side of 11th Avenue, he was not intoxicated."

It is now contended that appellant was prejudiced by the rejection of this offered proof of the contents of the report as the officer had made it at the time. It was error to reject the proffered proof, for the following reasons: First, it tended to contradict the witness' testimony in reference to intoxication. It was a statement made by the officer at a time when the matter was fresh in his mind immediately after the happening of the accident, and tended to contradict parts of the officer's testimony on the witness-stand and contained at least two statements bearing on the question of intoxication, namely, (a) "His main concern was for his wife whom he insisted *was with him at the time of accident,* also wanted to know *where the rest of the gang were*"; and (b) that witness reported to his superior officer that "he had been drinking but we could not find a bottle." It may very well be argued that this evidence, if admitted, would not have necessarily changed the finding "that at the time the claimant turned south . . . . and ran into the tree on the left side of 11th Avenue, he was not intoxicated." Since the burden of proof

to show intoxication is cast upon the employer (sec. 43–1002, I. C. A.), we agree that the rejected evidence was not sufficient to prove intoxication and would probably not have changed the finding of the board.

It is further urged by the appellants that the accident here complained of did not arise out of and in the course of claimant's employment; and one of the reasons urged for this contention is that claimant was *at the time of the accident* violating chapter 32 of the Ordinances of the City of Nampa, which regulated the speed, signals, and motorists' right of way at crossings and manner of turning. The board answered this contention simply by setting out the ordinances as proven and then holding ''that the injuries received by claimant in said accident arose out of and in course of his employment with both of said defendants.''

The sections of the ordinances plead were evidently violated by claimant. They are directory and mandatory but *do not carry any penalty* for their violation. An examination of the authorities discloses that there is a variety of opinion among the courts as to just when a violation of the rules of the employer, a municipal ordinance, or statute will have the effect of removing the employee, for the time being, from the course of his employment and deprive him of the right of compensation for injury received at such time.

For illustration; it has been held that the violation of a positive statute, even though it carries no penalty, takes the employee, for the time, out of the line of his employment and defeats his right to recover compensation. (*Gima v. Hudson Coal Co.*, 106 Pa. Super. 288, 161 Atl. 903, 906; note 83 A. L. R. 1212; *Beshenick v. Pittsburgh Terminal Coal Corp.*, 110 Pa. Super. 156, 167 Atl. 416; *Shoffler v. Lehigh Valley Coal Co.*, 290 Pa. 480, 139 Atl. 192; *Bugh v. Employers' Reinsurance Corp.*, 63 Fed. (2d) 36; *Fortin v. Beaver Coal Co.*, 217 Mich. 508, 187 N. W. 352, 23 A. L. R. 1153; *Frigidaire Corporation v. Industrial Acc. Com.*, 103 Cal. App. 27, 283 Pac. 974.) On the other hand, it seems to be generally held that the violation of a rule or regulation promulgated by the employer, or traffic regulation, is not necessarily fatal to the employee's right to recover compensation, though as

said in one case, "The line of demarcation is ofttimes very finely drawn." (*Dubit v. Sheffield Farms Co., Inc.,* 118 N. J. L. 411, 193 Atl. 546, 548. See, also, *Lazarz' Case,* (Mass.) 200 N. E. 275, 276; *Lemmler v. Fabacher,* 19 La. App. 144, 139 So. 683, 684; *Enfield v. Certain-Teed Products Co.,* 211 Iowa, 1004, 233 N. W. 141, 145; *Great Atlantic & Pacific Tea Co. v. Industrial Com.,* 347 Ill. 596, 180 N. E. 460, 462, 83 A. L. R. 1208; *Great Western Power Co. v. Pillsbury,* 170 Cal. 180, 149 Pac. 35; *Jackie Coogan Productions, Inc., v. Industrial Accident Com.,* 21 Cal. App. (2d) 225, 68 Pac. (2d) 750, at 753; *Fortin v. Beaver Coal Co., supra;* see, also, *Manion v. Waybright,* 59 Ida. 643, 86 Pac. (2d) 181.)

▮ The controlling principle on this question seems to be very well stated by the Supreme Court of Pennsylvania in *Shoffler v. Lehigh Valley Coal Co., supra,* as follows:

"The fact of employment is not the sole basis for compensation. It requires also that the injury shall have occurred in the course of employment. The expression 'in the course of employment,' as used in the law of master and servant, means while injured in the service of the master, and is not synonymous with 'during the period covered by his actual employment.' "

▮▮ It is not necessary for us to commit ourselves now to any one of the rules mentioned, for the reason that if it be conceded, for our present purposes, that violation of a municipal ordinance might temporarily remove the employee from the course of his employment, there is sufficient evidence here (if believed) to excuse claimant in violating the traffic ordinance. At most, proof of the violation of the ordinance at the time of the injury would be rebuttable by the claimant. In such case, he may show that he was confronted with circumstances which rendered it reasonably necessary for him to cross to the wrong side of the street in order to avoid a collision, or the impossibility of his giving the required signals; and that in such emergency he was acting as a reasonably prudent person would act under such circumstance, in course of his employment, and thereby excuse his violation of the regulations. The board in this case evidently concluded

that claimant satisfactorily met and answered the requirements of this latter rule.

We have repeatedly read and considered this record and although the evidence is far from satisfactory to the effect that the accident and resultant injuries arose out of and in course of respondent's employment, we are nevertheless unable to say that, *there is no substantial evidence to support the board's finding.* (Sec. 9, art. 5, Const.; 1937 Session Laws, page 498.)

The order of the board will therefore be, and is hereby, affirmed. Costs awarded to respondent.

Givens, Morgan and Holden, JJ., concur.

Budge, dissents.

---

ON PETITION FOR REHEARING.

(Filed May 24, 1939.)

AILSHIE, C. J.—A petition for rehearing has been presented in which appellant says:

"One of the two major questions presented on the appeal and by the brief of appellants was based upon the proposition that at the time of his injury the *claimant was not acting for or on behalf of Realty Trust Company,* but was *merely in the service of the Elks Lodge.* This question was briefed and argued orally at length. The opinion of this Court on file does not either refer to or decide the question so presented. We submit that it is important that the question be fully considered and decided."

We thought at the time the original opinion was rendered that it sufficiently covered the material errors assigned but after examination of appellant's petition, we have again reviewed the matters urged.

Potter testified that he started "down town" in his car to discharge "two duties": One was

"to deposit and make a record of the Elks money and the other was to receive a letter at the post office which I had been looking for for two days, in regard to a real estate deal. I wanted to know whether that letter was in because it would save me time in the morning; . . . . it was primarily to complete a real estate sale."

The contention is made by appellant that when the respondent was driving to the Realty Company's office to deposit the money he had collected for lodge dues, he was engaged *solely in the business of the lodge as employer* and was in no way engaged in the business of the Realty Trust Company. In support of this contention counsel cite and discuss the cases of *Press Publishing Company v. Industrial Accident Commission,* 190 Cal. 114, 210 Pac. 820, and *Hartford Accident etc. Co. v. Industrial Acc. Com.,* (Cal. App.) 256 Pac. 873.

An examination of these two cases discloses that, in the former (*Press Pub. Co. v. Indus. Acc. Com.*) the Supreme Court of California held that where the employee was rendering concurrent services of different character for two employers, and in doing so it was equally convenient to travel the same road in the discharge of the services for each employer, and an accident occurred under such circumstances, each employer would be ratably responsible. In the later case of *Hartford Acc. etc. Co. v. I. A. C.,* the District Court of Appeals held there was no concurrent liability and analyzed and distinguished the Press Pub. Co. case, saying:

"Had the accident in question occurred at a time when the boy was concurrently engaged in his two separate occupations of delivering newspapers and assisting in the delivery of milk, in view of the decisions, and especially the case of *Press Publishing Co. v. Industrial Accident Commission,* . . . . it perhaps would follow that the proprietor of the newspaper would be liable for compensation to the boy as provided by the statute."

A study of the two cases leads to the conclusion that the court in each case was of the opinion that where an employee is working for separate employers on different tasks; and it is necessary or equally convenient to travel over the same road

and in the same direction to discharge the several tasks requiring the attention of the employee; and an accident occurs while on such trip, each employer is liable. That on the other hand, if the employee has passed the common thoroughfare and is proceeding on the way that leads only to the one service and would not be used in discharging the other, only the employer being directly served would be liable.

As we view the evidence in the case before us, it brings this case within the rule announced in the Press Publishing Company case. In other words, here the employee Potter says that he was going "down town" to the Realty Company's office, where he kept on deposit the lodge funds, for the purpose of depositing funds he had collected that afternoon; and that he intended, after making such deposit, to proceed on to the post office (also "down town") and secure a letter (if it had reached the post office) for his other employer the Realty Trust Company. It seems, so far as the record discloses, that the route he traveled from his residence would have taken him, first, to the Realty Trust Company's office and from thence to the post office and that when the accident occurred he was on the way which he could and would have used in going to discharge either one of the duties. In such case it seems that where an accident occurs there is concurrent liability.

The petition is denied.

Givens, Morgan and Holden, JJ., concur.

Budge, J., dissents.