(No. 7026. July 7, 1942.)

EFFIE GRAGG, Appellant, v. COOK CEDAR COMPANY and IDAHO COMPENSATION COMPANY, Respondents.

[127 Pac. (2d) 757.]

Wm. D. Keeton for appellant.

Ralph S. Nelson for respondents.

MORGAN, J.—This is a case wherein the widow of a deceased workman sought compensation, claiming her husband's death, which occurred June 24, 1941, was caused by accident arising out of and in the course of his employment by Cook Cedar Company. After a trial, the Industrial Accident Board made findings of fact, a ruling of law and an

order denying compensation. Claimant has appealed from the order and respondents have served and filed a notice of cross-appeal from certain findings of fact made by the board. Appellant moved to dismiss the cross-appeal on the ground that the workmen's compensation law does not provide for, nor contemplate, appeals from findings of fact.

Respondents contend: 1. That appellant's husband was not an employee of Cook Cedar Company, at the time of the accident which caused his death, but was a member of a copartnership composed of himself and Frank Olson, an independent contractor, and was acting as such, when it occurred, and 2. that the injuries from which claimant's husband died did not result from an accident which arose out of and in the course of his employment by Cook Cedar Company. In support of their notice of cross-appeal, they assert that there is no substantial, competent evidence that appellant was a dependent of her deceased husband at the time of his death, and that certain of the findings of fact are erroneous. We believe a decision with respect to respondents' first contention will dispose of the case.

The evidence shows respondent, Cook Cedar Company was, at all times mentioned in the proceeding, engaged in the business of manufacturing, buying, transporting and selling cedar poles; that in 1940, it acquired, by purchase from the United States, cedar pole timber standing on a tract of land, referred to in the transcript as section 17, near Emida, Idaho. November 13, 1940, after acquiring said cedar pole timber, the company entered into an agreement with appellant's husband, Charles E. Gragg, and Frank Olson, for the manufacture and delivery of the poles at its yard at St. Maries, Idaho. The compensation to be paid for the manufacture and delivery of the poles was by the piece, dependent on the size of the poles. The agreement was oral, with the exception of the price per pole to be paid, which was evidenced by a printed and written price list.

With respect to the making of the contract, Fulton Cook, president of the company, testified:

"A. Mr. Gragg came into the office and said he had found a nice bunch of cedar poles on section 17, at the head of Deep Creek near Emida. He said he would like to get them out for us but he had no money to carry the job. He

wanted to know if we would put up the money and he get them out and sell them to us.

"* * *

"A. He said he didn't have the money to carry the job and if we would put up the money to pay the stumpage and carry the job and pay the labor, buy the supplies, that he and Mr. Olson would go in and produce the poles, start up a camp and employ such men as were necessary to help them produce and deliver the poles, but he had no way of hiring the men himself unless someone would pay the bills, he had no equipment to speak of, but he could get the poles made and put on skids and later could contract for the hauling of them to our yard."

Frank Olson testified:

"Q. Did you enter into a contract to get out cedar poles?

"A. Well, Gragg was the man that took the contract and I went in with him.

"Q. And afterwards you went in as his partner?

"A. At the time.

"Q. At the time?

"A. At the time—he asked me if I would.

"Q. You and Gragg were in on it on a fifty-fifty basis?

"A. Yes.

"Q. And you were short of funds and the Cook Cedar Company agreed to advance the funds? * * *

"A. Well, I didn't agree to it, but I had no funds to work on the job.

"Q. Did the Cook Cedar Company advance funds to run the work?

"A. Yes."

Shortly after the agreement was entered into, Gragg and Olson commenced the manufacture of cedar poles in section 17 and continued thereat until Gragg's death. They employed other men to assist with the work. The men were paid for their labor by Cook Cedar Company, by orders, some of which were drawn and signed by Gragg and Olson, others orally stated by them, or one of them, to the officers and agents of the company. The money so paid by the company for labor so employed by Gragg and Olson was charged to their contract. The evidence also shows that

Gragg and Olson drew money, from time to time, from Cook Cedar Company for labor performed by them, individually, at the rate of $5.00 per day; that these sums were also charged against their contract and deducted from money due, or to become due to them for the manufacture and delivery of poles; that the company paid social security excise tax on a report made by Gragg and Olson, and the money so paid was charged against their contract.

With respect to the premiums paid for workmen's compensation insurance, Mr. Cook testified:

"Q. I want to be certain—what was done in reference to the compensation premiums that you paid the Idaho Compensation Company upon either Gragg or Olson, or any of their employees. * * *

"A. It was the same as any other bill—we merely charged it to the account of Olson and Gragg, any expenditure was charged to the same account."

The record shows that, at the request of Gragg and Olson, the company procured industrial accident insurance covering their employees and themselves; that the names of the persons so covered did not appear in the application for insurance or in the policy; that sometime prior to the accident which resulted in his death, Gragg suffered an accident and made claim for compensation; that the surety issued a check in payment of the claim, which was not delivered until after his death; that on learning of Gragg's status with, or relationship to, the Cook Cedar Company, the surety stopped payment on the check and returned the amount of premium which it had theretofore collected on the insurance of Gragg and Olson, personally, but not on the insurance of their employees.

In an effort to show that Cook Cedar Company controlled the work done in the production of the poles, some testimony was introduced to the effect that its vice-president requested that some poles of certain specified lengths be cut and manufactured. The evidence on this point has been carefully examined and is found to fall short of establishing that the company either exercised, or had the right to exercise control over the work done by Gragg and Olson, or by their employees.

[I] The facts disclosed by the record in this case are sufficient to sustain the order of the Industrial Accident

Board denying compensation. In *Knight v. Younkin*, 61 Ida. 612, 621, 105 Pac. (2d) 456, 459, we said:

"In workmen's compensation cases, where the facts presented by the testimony of witnesses, stipulation or otherwise, are conflicting, and where facts appear in the record which, if uncontradicted, would be sufficient to support the order appealed from, it will not be reversed on appeal. (*Golay v. Stoddard*, 60 Ida. 168, 89 Pac. (2d) 1002; *Potter v. Realty Trust Co.*, 60 Ida. 281, 90 Pac. (2d) 699; *Rand v. Lafferty Transportation Co.*, 60 Ida. 507, 92 Pac. (2d) 786; *Brink v. H. Earl Clack Co.*, 60 Ida. 730, 96 Pac. (2d) 500; *Totten v. Long Lake Lumber Co.*, 61 Ida. 74, 97 Pac. (2d) 596.)"

This conclusion renders a decision of the other questions unnecessary. The order appealed from is affirmed.

Costs are awarded to respondents.

Givens, C. J., and Budge, Holden, and Ailshie, JJ., concur.