322 P.2d 330 (1958)
In the Matter of the Death of Velty Melvin LINZY.
Mae E. LINZY, surviving widow on her own behalf and on behalf of Theodore, Jeffry Lee, Kevin, Wayne and Kim Arlin Linzy, minor dependents, Claimant-Appellant,
v.
CAMERON'S, Inc., Employer, and Truck Insurance Exchange, Surety, Defendants-Respondents.
No. 8571.
Supreme Court of Idaho.
February 27, 1958.
Walter M. Oros, Boise, for appellant.
Parry, Robertson & Daly, Twin Falls, for respondents.
SMITH, Justice.
Velty Melvin Linzy, appellant's decedent husband, received injuries when his automobile, which he was driving, returning to his home the early morning of March 8, 1956, left the highway and collided with bordering objects. His death occurred on that date shortly after the collision.
Appellant seeks workmen's compensation death benefits asserting that Linzy's death, from the injuries received, was caused by an accident arising out of and in the course of his employment by respondent employer. The Industrial Accident Board after a hearing entered its order denying recovery. Appellant perfected an appeal therefrom. Relevant facts are hereinafter related.
Linzy was employed as parts foreman by respondent Cameron's, Inc., employer, a mercantile establishment in Rupert.
Cameron's, Inc. had a local sales franchise with International Harvester Company, herein referred to as the Harvester Company. Mr. Hatch was the Harvester Company's zone manager in Eastern Idaho and Mr. Olson was its parts zone supervisor.
Linzy had won first prize in a sales contest sponsored by the Harvester Company during the fall of the year 1955, as he had on at least two previous occasions.
Olson and Hatch during early March, 1956, were in the general territory embracing Rupert on business of the Harvester Company. Olson stopped at Cameron's, Inc., the morning of March 5, 1956, on his way to another city in the territory. He *331 had with him the prize won by Linzy, an engraved marble electric clock. Olson told Linzy's assistant, Mr. Kotter, that he, Olson, would be back Wednesday or Thursday of the week, i. e., March 7th or 8th.
Hatch during the day of March 7th told Linzy and Kotter that "he had a drink at the Motel if they would like to stop by after work they were welcome to." Both, after 6:00 o'clock p. m. quitting time, accepted Hatch's invitation and hospitality, at his motel room, about three-fourths of a mile north of Rupert.
Linzy then went to his home some four miles north of Rupert, arriving between 7:30 and 8:00 o'clock p. m. He changed a portion of his clothes, did not stay for supper, indicated, as appellant testified, that he was going to get the clock he had won in the sales campaign, and departed from his home about 9:00 o'clock p. m. He then returned to Hatch's motel room. The three of them, Linzy, Kotter and Hatch, then proceeded in Linzy's automobile to a motel in Burley where Olson roomed, where they had drinks. After about one-half hour the four then went to a tavern in Burley where again they partook of drinks.
Olson had a 10:00 o'clock appointment. Approximately at that time both he and Hatch left the tavern. About an hour later Linzy and Kotter left and ate sandwiches at a cafe across the street. They then returned to Linzy's automobile parked at the motel where Olson roomed. They then started back to Rupert in the automobile but, at the outskirts of Burley, they stopped at another tavern. They stayed there from a half-hour to an hour, again consuming drinks. Linzy had consumed some six or seven highballs during the evening.
The two then drove back to Rupert and to the motel where Hatch lodged; there they separated, Kotter leaving in his own automobile, previously parked there. Linzy then proceeded northerly on the highway toward his home. His automobile left the highway at a point about one and one-half miles south of his home, where the collision occurred which caused his death.
The Industrial Accident Board's ultimate finding in support of its order denying an award, reads in part as follows:
"At the time of the accidental death, Velty Melvin Linzy in the early morning of March 8, 1956, was returning to his home after a long social evening with friends. While his companions were his assistant in his occupation as a retail salesman and wholesale salesmen dealing with his employer, he was not on a mission for his employer."
This case presents the question whether Linzy's work created the necessity of his travel the evening of March 7th to the early morning of March 8, 1956, though engaging in his own personal objectives.
Appellant by her assignments contends, though a purpose for the particular trip may have been personal to Linzy, that nevertheless the evidence shows a concurrent purpose for the benefit of Linzy's employer, and in that regard asserts insufficiency of the evidence to support the Board's findings and denial of compensation. Our province therefore is to determine whether there is sufficient competent evidence to sustain the Board.
Appellant asserts that the Board erred in finding that Olson did not expect the visit of Linzy and Kotter the evening of March 7th.
Olson testified that between March 5th, when he stopped at the employer's place of business, on his way through to another city, and the evening of March 7th, he had not asked either Linzy or Kotter or any representative of respondent employer to meet him in Burley. His testimony then appears:
"Q. Did you know that either Mr. Kotter or Mr. Linzy were coming to see you on March 7th? A. No, I didn't know that they were even coming over."
Such evidence is undisputed, substantial and competent and therefore sufficient to sustain the finding that Olson did not expect the visit.
*332 Appellant next assigns error of the Board in finding, "Although not specifically invited to do so, they [Linzy and Kotter] expected to dine with Hatch and Olson and spend the evening with them."
In addition to Olson's testimony that he did not expect the visit by Linzy and Kotter, the evening of March 7th, Hatch testified:
"Q. Did you have any discussion with them [Linzy and Kotter] about dinner that evening? A. Not to my knowledge.
"Q. As a matter of fact, did you eat dinner with either of them that evening? A. No."
Additionally, Kotter testified that to his knowledge Hatch did not say anything about dinner that evening, March 7th. The evidence shows that the only two persons, Olson and Hatch, who could have extended such an invitation, did not do so. Such evidence, being substantial and competent sufficiently sustains the Board's aforesaid finding.
Appellant asserts that the Board in its findings over-emphasized Linzy's consumption of highballs during the evening of March 7th.
Intoxication is not an issue (I.C., sec. 72-202), nor was such evidence intended to relate to such statutory defense. On the contrary, respondent, upon waiver of objection, adduced the evidence, upon which rests such referred to portions of the findings, as bearing on the question,  quoting respondents' counsel,  "whether they [Linzy and Kotter] were * * * in the scope of their employment at the time." Such theory was proper; and certainly it is within the province of the Board to weigh such evidence in the light of the other evidence adduced for the purpose of determining whether Linzy was engaged in performance of his master's business, either wholly, or concurrently with his personal objectives. We find the comments of the Minnesota Supreme Court relative to a situation similar to that presented in the case here, in Reinhard v. Universal Film Exchange, 197 Minn. 371, 267 N.W. 223, 226, quoting from McCarty v. Twin City Egg & Poultry Ass'n, 172 Minn. 551, 216 N.W. 239, as follows:
"`The time and circumstances attending this trip, including the testimony as to intoxication and the features of the collision, are such as to throw discredit upon relator's testimony that the trip to Hugo was in his employer's business. * * * We are not authorized to overthrow the finding of fact here assailed, for on the whole record it cannot be said that the evidence compels a finding that relator was in the course of his employment when going to or coming from Hugo, the evening in question.'"
And in Beebe v. Horton, 77 Idaho 388, 293 P.2d 661, it is stated that not only the nature of the business and duties of the employee, but also the activities that the employee was engaging in, must be considered, in determining factors of compensability.
Appellant asserts error of the Board in failing to make certain findings, i. e., that evening meetings of the Harvester Company's sales representatives with Linzy and Kotter were commonplace and expected as a part of the employment; that the employer knew beforehand that the evening meeting of March 7th was to take place and that such meeting was for the employer's benefit, though personal reasons constituted a concurrent cause of the trip.
Appellant attempted to show by the employer's manager, Mr. Cameron, on cross-examination, that Linzy was about the employer's business the evening of March 7th, but without success. Cameron's testimony being:
"Q. And if Mr. Linzy was with Mr. Hatch on the evening of March 7, 1956, it was on behalf of Cameron's Inc., in discussing its business?
* * * * * *
"A. I don't know what reason they had for being together."
Appellant also tried to develop from Cameron the fact of Linzy's past attendance at meetings with Hatch and Olson, but without *333 success; Cameron's testimony in that regard being:
"Q. To your knowledge, had he in the past, Mr. Velty Linzy, attended meetings with Mr. Hatch in the evenings? A. I don't know that he had ever been in a meeting with Mr. Hatch.
"Q. How about with Mr. Olson? A. I have no knowledge of any meeting between he and Mr. Olson."
Cameron also testified, Hatch told him that Linzy and Hatch would be together the evening of March 7th; but Cameron "didn't know anything about the meeting." Cameron knew about the clock; Hatch had told him; but he did not know when it was to be presented to Linzy; he did not receive any telephone call from Olson immediately prior to or on March 7th relative to the award of the clock.
Olson's testimony relative to the clock and lack of discussion of business matters appears as follows:
"Q. Did they [Linzy and Kotter] come in the room you had in this motel? A. Yes.
"Q. What did you do while they were there?
"A. Well they dropped in and said they heard I had this clock so they thought they would come over and pay me a visit that evening.
* * * * * *
"A. * * * We didn't discuss anything about the specific propositions I had to take up with the dealership or the parts man. * * *
* * * * * *
"A. * * * the regular business I had to take up with them on the regular calls was not discussed that evening."
Olson further stated that he intended leaving the clock with Linzy at his employer's place of business when he made his "regular call back there." Olson then stated that he retained the clock that evening because Linzy "didn't care to bring it home with him;" that he, Olson, did not retain the clock that evening for the purpose of causing repair of a broken figurine, although when sent in later, at his request, the Harvester Company had it repaired.
Mr. Cameron's further testimony appears as follows:
"Q. Did you have any conversation with Mr. Linzy or Mr. Kotter during the day of March 7, 1956, which related to their activities after six o'clock P.M.? A. No, I did not. * * *
* * * * * *
"Q. You said they left at about six o'clock, or a little after? A. That is correct.
"Q. Just as they were leaving, did you give Mr. Linzy any instructions as to his activities for that evening? A. I did not.
* * * * * *
"Q. Did you instruct Mr. Linzy to meet with them [Mr. Hatch or Mr. Olson] that evening? A. No. * * * I gave him no instructions.
"Q. Do you know any of the activities of Mr. Linzy after he left your place of business on March 7, 1956? A. Only what I was told.
"Q. But of your own knowledge, * * *? A. I have no knowledge.
* * * * * *
"A. I don't know what reason they had for being together."
Clearly in the light of the aforesaid testimony the Board committed no error in failing to find in the respects which appellant asserts it should have found. Such testimony on the contrary supports the Board's direct and ultimate finding, that Linzy, at the time of his accidental death, was returning home after a social evening with friends and not from a mission for his employer.
The facts of the case, considered in the light of such testimony, also support the obiter expression of the Board, suggesting an interpretation leaning toward appellant's theory, as far as the record will permit, i. e., "whatever tenuous connection there may *334 have been with his [Linzy's] employment in the earlier part of the evening of March 7, in `shop-talk' with the representatives of the International Harvester Company, was terminated when those representatives left the Yacht Club in Burley around 10 P.M." Olson and Hatch left Linzy and Kotter at that place and time.
The evidence and inferences to be drawn therefrom in support of denial of compensation amply support the findings in all the particulars wherein appellant asserts error committed by the Industrial Accident Board. Here, the Board, faced with an involved and somewhat conflicting record of evidence from which opposing inferences could be drawn, has performed its duty, in passing upon the compensation claim, of deciding the controversy according to the preponderance of the evidence and the reasonable probability of the truth of the matter. Pierstorff v. Gray's Auto Shop, 58 Idaho 438, 74 P.2d 171; Smith v. University of Idaho, 67 Idaho 22, 170 P.2d 404.
The findings of the Industrial Accident Board when supported by competent and substantial evidence will not be disturbed on appeal. Potter v. Realty Trust Co., 60 Idaho 281, 90 P.2d 699; Watkins v. Cavanagh, 61 Idaho 720, 107 P.2d 155; Bower v. Smith, 63 Idaho 128, 118 P.2d 737; Gragg v. Cook Cedar Co., 64 Idaho 50, 127 P.2d 757; Morgan v. Simplot, 66 Idaho 84, 155 P.2d 917; Kernaghan v. Sunshine Mining Co., 73 Idaho 106, 245 P.2d 806; Yanzick v. Sunset Minerals, Inc., 75 Idaho 384, 272 P.2d 696; Miller v. Bingham County, Idaho 1957, 310 P.2d 1089.
The order of the Industrial Accident Board is affirmed. Costs to respondents.
KEETON, C. J., and PORTER, TAYLOR and McQUADE, JJ., concur.