384 P.2d 473

Virgil PROFITT, Employee, Claimant-Appellant,

v.

DeATLEY–OVERMAN, INC., Employer, and State Insurance Fund, Surety, Defendants-Respondents.

No. 9333.

Supreme Court of Idaho.

Aug. 9, 1963.

J. H. Felton, Lewiston, for appellant.

Glenn A. Coughlan, of Coughlan & Imhoff, Boise, for respondent.

SMITH, Justice.

Claimant-appellant is herein sometimes designated as the claimant, and the Industrial Accident Board as the Board.

The principal issue in this proceeding is whether the evidence is sufficient to sustain an order of the Board suspending payment of compensation benefits to claimant under authority of I.C. § 72–401, because of his refusal to submit to medical examinations in order thereby to determine the condition which afflicts him and its probable cause,

and to determine such further rights as he may have in the premises.

Claimant suffered a low back injury on June 5, 1961, caused by an accident arising out of and in the course of his employment by respondent employer, near Orofino, Idaho. On that date he was treated by Dr. Gerard of Orofino. On June 9, 1961, he went to Dr. Roy W. Eastwood, in Lewiston, Idaho. Following examination, Dr. Eastwood concluded that claimant suffered from a "probable ruptured intervertebral disc." Dr. Eastwood referred claimant to Dr. Grieve, an orthopedic surgeon, at Spokane, Washington.

Dr. Grieve diagnosed claimant to be suffering from a herniated intervertebral disc, and recommended that he "go to the hospital right away and have a myelogram and probably an operation," if the myelogram verified the diagnosis. The evidence shows that a myelogram is an accepted medical procedure for determining the presence of an intervertebral disc injury. According to Dr. Grieve, claimant stated that he would return for the myelogram, but he did not do so; rather, claimant returned to Dr. Eastwood at Lewiston. Dr. Eastwood's treatment was conservative, consisting of medication for pain and muscle relaxants. Though Dr. Eastwood recommended surgery to correct claimant's back ailment, no such operation was ever performed.

Respondent surety paid claimant total temporary disability compensation, and paid his medical and kindred expenses incurred during the period from June 5, 1961 until July 3, 1962. On the latter date, respondents discontinued payments of compensation on the ground that claimant had unreasonably refused medical treatment within the meaning of I.C. § 72–401.

On August 30, 1962, claimant filed a petition for hearing before the Industrial Accident Board. He contended that his accidental personal injury suffered June 5, 1961, had totally disabled him for work from the time of the injury to and including the date of filing the petition; further, that he was permanently and totally disabled for work, and that he had refused "a major operation." He sought compensation benefits accordingly.

Respondents in their answer admitted claimant's industrial injury suffered June 5, 1961; alleged their willingness to furnish surgery, tendering it to claimant, and then alleged:

"That claimant has unreasonably refused medical treatment which has retarded and imperiled his recovery; that pursuant to Idaho Code, Section 72–401, compensation should be suspended to claimant."

The Board heard the matter January 15, 1963. It was not disputed that claimant was then totally disabled. Rather, the questions presented at the hearing pertained to whether claimant's disability is traceable to

the industrial accident of June 5, 1961; also whether claimant had unreasonably refused medical treatment and surgery.

Dr. Eastwood testified that claimant was presently totally disabled; that it would probably be necessary for claimant to undergo surgery before his condition would improve; that he, the doctor, had advised claimant to undergo surgery which advice claimant had rejected; and that, from a medical and surgical standpoint, such refusal was not reasonable.

Dr. Grieve, who had recommended a myelogram and a subsequent operation if the myelogram disclosed the existence of a herniated intervertebral disc, testified that he still recommended such procedure. He stated that he would not positively recommend surgery unless the myelogram indicated an injured disc because his examination in 1961 did not preclude the possibility that claimant's ailment was due to some other cause.

Dr. Colburn, an orthopedic surgeon, was called as a witness for claimant. Dr. Colburn, after having examined claimant on January 9, 1963, was of the opinion that claimant suffered from a "soft tissue injury, probable disc injury in the lumbar spine;" that he, the doctor, would not recommend surgery at present; rather, he recommended hospitalization with a period of investigational conservative treatment before a definite recommendation be made as to the necessity of surgery. Dr. Colburn estimated the period of hospitalization for this treatment would approximate two weeks. Respondents offered to pay claimant's expenses if he would submit to such hospitalization and treatment under the care of Drs. Eastwood and Colburn, and to pay him compensation during such period.

Claimant, through his counsel, refused to submit to such offered treatment unless respondents would pay to claimant compensation from July 3, 1962, the date payments were suspended, through January 15, 1963, the date of the Board's hearing, and for the additional period required for the investigational conservative treatment. The Board construed this counter proposal as claimant's rejection of respondents' offer.

At the conclusion of the hearing, the Board entered an order dismissing claimant's petition and suspending compensation until further order. In support of its order, the Board found that claimant received the low back injury caused by an accident arising out of and in the course of his employment by respondent employer; that respondents had paid compensation benefits to claimant and for his use and benefit from the date of injury, June 5, 1961 to July 3, 1962; that he had refused surgery notwithstanding the fact his attending physicians had advised the same; and that claimant had refused

diagnostic and conservative treatment which respondents had tendered him.

Based upon those findings the Board entered Ultimate Findings of Fact and Rulings of Law as follows:

"The Board finds and rules that claimant's refusal to submit to a myelographic examination and his refusal of submitting to surgery, if a myelogram discloses the existence of a herniated intervertebral disc, are unreasonable and injurious practices which have impaired and retarded his recovery.

"The strongest proof of claimant's intransigeance was demonstrated at the hearing when he refused to accept defendants' tender of two weeks' hospitalization with diagnostic and conservative treatment under the ministrations of the very physicians whom he had called to the stand to testify on his behalf. The purpose of the proffered treatment was to determine the feasibility of claimant's rehabilitation by means other than surgery."

Claimant contends that the Board erred in suspending the compensation payments on the grounds that claimant had unreasonably refused hospitalization with the proffered treatment and surgery, if the treatment disclosed the existence of a herniated intervertebral disc. The Board relied upon I.C. § 72–401, which provides:

"Medical examination.—After an injury and during the period of disability, the workman, if so requested by his employer, or ordered by the board, shall submit himself to examination, at reasonable times and places, to a duly qualified physician or surgeon designated and paid by the employer. * * If a workman refuses to submit himself to or in any way obstructs such examination, his right to take or prosecute any proceeding under this act shall be suspended until such refusal or obstruction ceases, and no compensation shall be payable for the period during which such refusal or obstruction continues. If an injured workman persists in insanitary, injurious or unreasonable practices which tend to imperil or retard his recovery, the board may, in its discretion, order the compensation of such workmen to be suspended or reduced."

The question of the unreasonableness of claimant's refusal to submit to diagnostic and conservative treatment is a question of fact to be determined by the Industrial Accident Board. I.C. § 72–401; Hays v. Industrial Commission, 138 Colo. 334, 333 P.2d 617; Cranston Print Works v. Pascatore, 72 R.I. 471, 53 A.2d 452; Robinson v. Jackson, 116 N.J.L. 476, 184 A. 811; Cuchi v. George C. Prendergast & Sons, (Mo.App.), 72 S.W.2d 136. The

record disclosed competent and substantial evidence in support of the Board's finding that claimant unreasonably refused to submit to the tendered investigational conservative treatment. Although claimant had previously submitted to similar treatment by Dr. Eastwood, he refused to accept the proffered hospitalization and treatment because respondents' tender did not include an offer to pay him compensation from the date payment thereof was suspended, July 3, 1962, to the date of the hearing on January 15, 1963.

█ The Board's order is further supported by the evidence adduced from claimant's attending physicians, produced as his medical witnesses, to the effect that claimant should undergo further conservative diagnostic treatment in order that the nature of his injury or affliction be accurately determined; also by Dr. Grieve, the orthopedic, who diagnosed a herniated intervertebral disc, but recommended that claimant first submit to a myelogram in order to verify such diagnosis before any operative procedure be considered. Dr. Colburn, while · of the opinion that claimant should not submit to a myelogram at this time [time of hearing], stated that he would recommend a myelogram in the event claimant failed to respond to perhaps two weeks of the conservative diagnostic treatment which he, Dr. Colburn, suggested. It was

on the basis of Dr. Colburn's opinion that respondents tendered such treatment, and which treatment included neither a myelogram nor surgery. Under such facts and circumstances, we are constrained to the view that the evidence is sufficient to support the Board's finding that claimant, in his refusal to submit to such conservative diagnostic treatment, was unreasonable. Accordingly, such finding will not be disturbed on appeal. In re McDaniel, 84 Idaho 7, 367 P.2d 302; Flasche v. Bunker Hill Company, 83 Idaho 420, 363 P.2d 1024; In re Linzy, 79 Idaho 514, 322 P.2d 330; Devlin v. Ennis, 77 Idaho 342, 292 P.2d 469; Nitkey v. Bunker Hill & Sullivan Mining & Con. Co., 73 Idaho 294, 251 P.2d 216.

There appears to be confusion as to whether claimant was unreasonable in refusing surgery. Deeming that the confusion in the premises ought to be cleared, we entertain the view that such issue is not before the Court on this appeal; nor can such issue receive proper consideration until the nature and probable cause of claimant's affliction first be determined; and that determination under the evidence can be had only in the event and at the conclusion of the conservative diagnostic treatment recommended by the medical experts, which may or may not require a myelogram in further aid of an accurate diagnosis.

We are mindful of appellant's contention that I.C. § 72–401 does not specifically pro-

vide for suspension of compensation to an industrially injured workman because of his refusal to submit to surgery and that such silence may constitute an indication that the legislature did not intend to impose upon a covered employee the mandate to submit to major operative procedure if attended with serious physical risk, or else suffer a loss of compensation; citing Cate v. M. S. Perkins Machine Co., 102 N.H. 391, 157 A.2d 778; Mancini v. Superior Court, 78 R.I. 373, 82 A.2d 390.

We are also mindful of respondents' position, inter alia, should the workman refuse surgery, such an interpretation of I. C. § 72–401 should not be permitted to the end that the injured workman subject his employer to any greater liability than would attain had the workman submitted to the surgery designed to alleviate the injured condition, and in some measure to rehabilitate him; citing Industrial Commission v. Vigil, (Colo.), 373 P.2d 308.

Again, we are constrained to the view that those issues are not before us on this appeal.

The order of the Industrial Accident Board suspending payment of compensation to claimant, until the Board's further order, is affirmed.

Costs to respondents.

KNUDSON, C. J., and McQUADE, Mc-FADDEN and TAYLOR, JJ., concur.