814 P.2d 424

Susan HEWSON, Claimant–Appellant,

v.

ASKER'S THRIFT SHOP, Employer,
and Argonaut Insurance Company,
Surety, Defendants–Respondents.

No. 18524.

Supreme Court of Idaho.

July 5, 1991.

Goicoechea Law Offices, Chdt., Boise, for claimant-appellant. Lynn M. Luker argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for defendants-respondents. Glenna M. Christensen argued.

BOYLE, Justice.

This is an appeal from a decision and order of the Industrial Commission, which denied claimant-appellant's request to tape record a surety medical evaluation, and denied subsequent compensation benefits.

## I.

## FACTS

Hewson, an employee of Asker's Thrift, injured her back on the job on June 4, 1988. A claim was filed and benefits were paid. On October 4, 1988, the surety for Asker's Thrift, Argonaut Insurance Companies, arranged for Hewson to undergo a medical panel evaluation with Dr. Eric Holt, a psychiatrist, and Dr. Thomas Henson, a neurologist. Hewson took a microcassette recorder and was accompanied by her former husband when she went to both of the appointments. At both times she stated to the physicians that she was willing to undergo the evaluation but requested that either her former husband be present during the evaluation or that she be allowed to tape record the examinations. According to the record, Hewson never stated that

she was unwilling to submit to the medical evaluation but only that she wanted to tape record the proceedings so that there were no misunderstandings.

Initially, Dr. Holt agreed to allow Hewson to tape the evaluation. However, after receiving a telephone call from the surety, he refused to continue the evaluation if Hewson used the recording device or if another person was in attendance. Dr. Henson also refused to allow the use of a tape recorder.

As a result of Hewson declining to submit to an evaluation without either the presence of her former husband or the use of a tape recorder, the surety determined Hewson was uncooperative and her actions obstructed the panel evaluation, and terminated her benefits pursuant to I.C. § 72-434.[1]

Hewson filed an application for hearing on November 23, 1988, alleging wrongful withholding of temporary disability benefits. In addition, Hewson filed a request for a hearing on February 15, 1989, to determine her right to tape record the medical evaluation. On February 16, 1989, the Industrial Commission issued an "Administrative Policy Statement" stating employees could not tape record medical evaluations.

The parties presented to the Industrial Commission a joint petition for decision based upon stipulated facts and a hearing was held to determine whether a recording device would defeat the credibility of a medical examination. After the hearing the Industrial Commission ruled that, 1) the claimant had no constitutional right to have a tape recorder at the panel evaluation; 2) the claimant did not have a statutory right to have a tape recorder at the panel evaluation; 3) there were no policy reasons sufficient for the Commission to allow tape recorders at medical evaluations; and 4) by having the tape recorder at the panel evaluation and insisting upon its use, the claim-

---

1. I.C. § 72-434 provides:

   **72-434. Effect of refusing medical examination—Discontinuance of compensation.—** If an injured employee refuses to submit himself to or in any way obstructs an examination by a physician or surgeon designated by

the commission or the employer, his right to take or prosecute any proceedings under this law shall be suspended until such refusal or obstruction ceases, and no compensation shall be payable for the period during which such refusal or obstruction continues.

ant obstructed the panel evaluation and, therefore her benefits were properly terminated pursuant to I.C. § 72–434.[2] Hewson appeals the decision of the Industrial Commission. We reverse.

## II.

### STANDARD OF REVIEW

This Court's review of worker compensation cases appealed from the Industrial Commission is limited by the Idaho Constitution and prior decisions of this Court to reviewing questions of law. Idaho Constitution, art. 5, § 9; *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 589 P.2d 89 (1979); *Ledesma v. Bergeson*, 99 Idaho 555, 585 P.2d 965 (1978); *Madron v. Green Giant Co.*, 94 Idaho 747, 497 P.2d 1048 (1972); *Wachtler v. Calnon*, 90 Idaho 468, 413 P.2d 449 (1966); *In re Walker's Claim*, 80 Idaho 420, 332 P.2d 199 (1958). The court is not bound by conclusions of law drawn by the Industrial Commission; an order of the Commission must be set aside where the law is misapplied to the evidence. On questions of law we exercise free review. *Combs v. Kelly Logging*, 115 Idaho 695, 769 P.2d 572 (1989). Appellate review of findings of fact made by the Commission is limited in scope. Findings supported by substantial competent evidence will not be disturbed on appeal. *Id.; Greenrod v. Parris*, 115 Idaho 109, 765 P.2d 134 (1988). We have consistently declined to independently adopt findings of fact at variance with those of the Industrial Commission where those findings are supported by substantial and competent evidence in the record. *Spruell v. Allied Meadows Corp.*, 117 Idaho 277, 787 P.2d 263 (1990); *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978). It is with these standards in mind that we review this case.

## III.

### RIGHT TO RECORD MEDICAL EVALUATION AND EXAM

The Idaho Industrial Commission concluded as a matter of law that claimant did not have a constitutional or statutory right to tape record the requested medical evaluation. Because she had not raised the issue at any time during the hearing process, the Commission summarily dismissed claimant's argument that she had a constitutional right to record the exam. The Commission then applied the doctrine *expressio unius est exclusio alterius*, "the expression of one thing is the exclusion of another," in interpreting the legislative intent of I.C. § 72–433. That statute reads in part:

**Submission of injured employee to medical examination or physical rehabilitation.—**

(1) After an injury or contraction of an occupational disease and during the period of disability the employee, if requested by the employer or ordered by the commission, shall submit himself for examination at reasonable times and places to a duly qualified physician or surgeon. The employee shall be reimbursed for his expenses of necessary travel and subsistence in submitting himself for any such examination and for loss of wages, if any.

(2) The employee shall have the right to have a physician or surgeon designated and paid by himself present at an examination by a physician or surgeon so designated by the employer. Such right, however, shall not be construed to deny the employer's designated physician or surgeon the right to visit the injured employee during reasonable times and under all reasonable conditions during disability.

Since the statute only expressly allows the employee to have another physician or surgeon present, the Commission determined that Hewson was not entitled to have her former husband present, nor was she entitled to electronically tape record the evaluation and examination.

However, we note that the maxim, *expressio unius est exclusio alterius,*

**2.** The Industrial Commission did not rely on its Administrative Policy Statement in making its final determination. Thus, we need not decide whether the Policy Statement is in accord with the Idaho Administrative Procedures Act.

is only a tool used to determine legislative intent. It is not an unimpeachable rule of law. *Noble v. Glenns Ferry Bank, Ltd.*, 91 Idaho 364, 421 P.2d 444 (1966). The primary rule of statutory construction is that statutes must be interpreted to mean what the legislature intended for them to mean. *In re Interest of Miller*, 110 Idaho 298, 715 P.2d 968 (1986); *Carpenter v. Twin Falls County*, 107 Idaho 575, 691 P.2d 1190 (1984). In *State v. Michael*, 111 Idaho 930, 729 P.2d 405 (1986), we clarified the application of this doctrine as follows:

> When a statute enumerates the areas which are to be encompassed in its enforcement, it is generally accepted that those areas not specifically mentioned are not to be included. In other words, the specific mention of one thing implies the exclusion of another; expressio unius est exclusio alterius.

*Id.*, 111 Idaho at 933, 729 P.2d at 408.

■ Idaho Code § 72–433 does not contain any express enumeration of persons who can or can not attend a medical evaluation or exam. The statute simply guarantees the right of an employee to attend a compelled medical examination with a physician of his or her choice. Thus, we hold the maxim suggested by the surety and the Industrial Commission does not apply in this case. The fact that the statute allows the employee's physician to be present, does not automatically or necessarily exclude all others. The plain language of the statute does not suggest that all others are excluded but rather only that a claimant's physician may be present.[3]

■ We construe and interpret that the legislative intent of I.C. § 72–433 is to protect an employee compelled to undergo medical examination by physicians whom he or she did not select against potential intrusive questions and techniques. Since physicians are obviously more versed in the techniques of medical examinations, the Idaho legislature intended to ensure that a claimant concerned about a compulsory second exam scheduled by the surety and conducted by a physician not of the employee's choosing, would be able to protect against unwarranted examination questions or techniques.

■ In *Greenhow v. Whitehead*, 67 Idaho 262, 175 P.2d 1007 (1946), this Court noted the "[i]nviolability of the person" and the intrusive nature of a compulsory examination. We held in *Greenhow*, that the plaintiff had the right to have present such attendants, reasonably limited as to number, as she may desire present during an examination compelled by a court. Although involving different proceedings, a similar legal issue and principle is presented in the facts of the instant appeal. We hold that I.C. § 72–433 does not prohibit a claimant in worker's compensation proceedings from electronically recording a surety compelled examination so long as such recording does not interfere with or obstruct the process.[4] We further hold that there is nothing in the language of this statute which would prohibit notetaking, whether it be with paper and pencil or by means of a tape recorder. However, this is not the end of our inquiry.

■ The Commission determined as a matter of law that the use of a tape recorder would inject an unnecessarily adversarial atmosphere in the medical examination, would increase the adversarial nature of a contested worker's compensation claim, and would open the door to untold other legal and practical problems. The Commission concluded that allowing an employee to tape record a medical evaluation would not be in the best public policy of this

---

3. *But see Feld v. Robert & Charles Beauty Salon*, 435 Mich. 352, 459 N.W.2d 279 (1990), where the Michigan Supreme Court held that the doctrine of *expressio unius est exclusio alterius* applies in constructing a statute similar to I.C. § 72–433 and bars an employee's attorney from accompanying an employee to a medical examination.

4. Although Hewson appeared at the medical examination with her former husband and requested that he be allowed to accompany her during the examination, the only question presented to us in this appeal is whether Hewson may use a microcassette recorder to record the audio statements of the examination.

state.[5] Although we defer and give great weight to the fact finding process and decisions of an agency charged with the responsibility to administer a particular set of statutes, when the agency's decision is not in accord with the intent of the statutes it is commissioned to enforce, we must correct the error.

■ In the instant case the Commission concluded as a matter of general policy that before any recording or notetaking will be allowed during a medical examination the employee must file a motion with the Commission which will only grant it "for good cause shown." Thus, the Industrial Commission placed the burden on the employee to prove that notetaking either by electronic, stenographic or other means is warranted. However, we hold this result ignores the plain mandate of I.C. § 72-434, which states:

**Effect of refusing medical examination—Discontinuance of compensation.** —If an injured employee refuses to submit himself to or in any way obstructs an examination by a physician or surgeon designated by the commission or the employer, his right to take or prosecute any proceedings under this law shall be suspended until such refusal or obstruction ceases, and no compensation shall be payable for the period during which such refusal or obstruction continues.

This statute puts the burden on the employer or surety to prove that the employee has unreasonably refused or obstructed the examination. The Industrial Commission's policy statement in this action wrongly reverses the applicable burden of proof.

■ Whether or not an employee's conduct rises to the level of an unreasonable obstruction is a factual question reserved for the Industrial Commission to determine. *Profitt v. Deatley–Overman, Inc.*, 86 Idaho 207, 384 P.2d 473 (1963). However, we, as a matter of law, may determine the threshold level of conduct that will be deemed as unreasonable. An obstruction is defined as "a hindrance, ob-

stacle or barrier and as delay, impeding or hindering." *Black's Law Dictionary*, 6th ed., p.1078 (1990). There are many and diverse ways in which an employee may obstruct a compelled examination. The question that arises in this case is whether the taping of a compelled examination rises to the level of an *unreasonable* obstruction. We hold that it does not.

In this case the record shows that Hewson stated to both physicians that she was willing to undergo the medical examination if she could tape record the proceedings. Both doctors Holt and Henson refused to proceed with the examination under those conditions. While we have held that the employer has the burden of proving that an obstruction has occurred, in this case, the record is clear that no unreasonable obstruction occurred. Simply requesting that she be allowed to tape record the medical examination without further testimony that the recording would otherwise obstruct or hinder the examination does not show that Hewson's request was unreasonable.

There was a great deal of conflicting testimony given at the hearing concerning the benefits and disadvantages of tape recording an examination. There was some testimony that a tape recorder would inhibit both the doctor and the claimant during the exam. However, all of this testimony is speculative. While tape recording may in certain instances hinder the examination process, the main question is whether it *unreasonably* obstructs the examination process. The evidence in this case simply does not show that Hewson's insistence upon a tape recorder was unreasonable. In light of the intrusive nature of a compelled examination, the tape recorder may well dispel some fears that the claimant might have concerning the examination.

Furthermore, we note that the legislature has heretofore determined that the attendance of a claimant's personal physician would not constitute an unreasonable obstruction of the examination. I.C.

5. The Commission, however, stated that where good cause is shown, such as when a claimant is verbally handicapped, the Commission would entertain a motion to have the examination tape recorded.

§ 72–433. In light of that statutory protection, we fail to see how the use of a small, simple recording device, properly used, would be anymore annoying or bothersome than the presence of a claimant's personal physician. The surety argues that a physician of claimant's choosing could personally attend the medical examination and the intended protections of the statute could be accomplished in this manner. Although in some circumstances a claimant may be able to afford the financial cost and persuade his or her own physician to attend the surety's medical examination, such an alternative in light of the availability or the cost involved in such a procedure is not a realistic option for most injured workers.

Accordingly, as a matter of law we hold that Hewson's requesting and properly using a small audio recording device is not unreasonable. We recognize that in some instances the improper use of a tape recording device may constitute an obstruction, however, given the facts in this case it is clear that there was no obstruction and the request was not unreasonable. We reverse the decision of the Industrial Commission and remand for further proceedings.

Since we have determined that there was no unreasonable obstruction in this case it is clear that the termination of Hewson's benefits for wrongfully refusing or obstructing the medical examination was erroneous. We hold that Hewson's benefits should not have been terminated pursuant to I.C. § 72–434. Reversed and remanded. Costs and fees on appeal to Hewson.

BISTLINE and JOHNSON, JJ. concur.

McDEVITT, J. concurs in result.

BAKES, C.J., sat but did not participate.

BISTLINE, Justice, specially concurring.

The only reason for writing separately is to forecast the warm reception which will be given to Justice Boyle's well thought out opinion which forthrightly informs the Commission that it simply is not acceptable to have a policy which is only for the sake of policy. In addition to the instant case, today's opinion for the Court makes it plain that there are many other instances in which the presence of a tape recorder or impartial adviser would not adversely affect the interaction and communication between an employer and its employees, and could only serve to enhance the resolution of misunderstandings and disputes.

In this day and age it would be considered un-American to require any citizen of these United States to submit to an examination of their body or mind by a person in the hire of an adverse party, whether individual or corporate, and who cannot be expected to be overly careful of the examinee's welfare and best interests. There is and can be no rational justification for examining any person as though that person is so much merchandise.

It is a matter of common understanding among civilized persons that even the most sophisticated feel squeamish, unprotected, and at risk when being examined as to mind and body without being accompanied by a close friend or relative, and where those are unavailable, then by at least having the comfort of a tape recorder. Even the average high school student whom I have known always preferred to be accompanied by a friend when making a trip to the principal's office.